## E. I. DU PONT DE NEMOURS & CO. v. SMITH.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1918. Rehearing Denied July 29, 1918.)

### No. 1585.

1. MASTER AND SERVANT ⬅286(10)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

In an action for personal injury to a machinist's helper, who, while oiling a loose pulley in the nighttime, had his arm caught and broken when the belt on a moving machine shifted from a tight pulley to the loose pulley, *held*, on the evidence, that defendant's negligence was for the jury.

2. MASTER AND SERVANT ⬅289(15)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for personal injury to a machinist's helper, who, while oiling a loose pulley in the nighttime, had his arm caught and broken when the belt on a moving machine shifted from a tight pulley to the loose pulley, *held*, on the evidence, that the plaintiff's contributory negligence was for the jury.

3. CORPORATIONS ⬦⟿580—FINANCIAL REORGANIZATION—ASSUMPTION OF LIA-
. BILITIES—SUIT AGAINST NEW CORPORATION.
   Where the company employing plaintiff when he was injured in order
to effect a financial reorganization transferred all its assets to a new
company, which assumed all the old company's liabilities, and there was
little change in the management of the business, plaintiff might sue the
new company directly for the negligence of its predecessor.

4. MASTER AND SERVANT ⬦⟿270(7)—PERSONAL INJURY—EVIDENCE—SUBSE-
QUENT REPAIRS.
   In an action for injury caused by a machine alleged to be defective,
the subsequent alteration or repair of the machine is not competent evi-
dence of negligence in its original construction, as such acts furnish no
legitimate basis for an inference of previous neglect.

5. APPEAL AND ERROR ⬦⟿1048(6)—HARMLESS ERROR—ADMISSION OF EVIDENCE.
   In a servant's action for injury while oiling a loose pulley, any error
in the admission of testimony on a long cross-examination that screens,
subsequently placed around the pulleys to exclude dust and particles
of cotton, would also operate to protect employés, was not so harmful
as to require a reversal.

In Error to the District Court of the United States for the Eastern
District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action by Leslie C. Smith, an infant, by M. H. Smith, his next
friend, against E. I. Du Pont De Nemours & Co. Judgment for plain-
tiff, and defendant brings error. Affirmed.

Charles E. Plummer and J. Gordon Bohannan, both of Petersburg,
Va., for plaintiff in error.

L. O. Wendenburg, of Richmond, Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and SMITH, Dis-
trict Judge.

KNAPP, Circuit Judge. Defendant in error, plaintiff below and
herein so called, recovered judgment for personal injuries sustained
by him in June, 1915, while in the employ of the E. I. Du Pont de
Nemours Powder Company, the predecessor of E. I. Du Pont de
Nemours & Co. The assignments of error, 17 in number, present three
questions, which will be briefly considered.

[1, 2] 1. It is first insisted that the proofs fail to show any negli-
gence on the part of the powder company, and therefore a verdict
should have been directed for defendant. At the time he got hurt plain-
tiff was about 18½ years old and had been employed since the previous
February as machinist's helper. The company had nearly completed
a number of large buildings at Hopewell, Va., and was testing the in-
stalled machinery preparatory to turning it over to the operating de-
partment. This machinery consisted of a main driving shaft, which
ran along the building on one side, and from which power was trans-
mitted by belts to the countershafts of the 36 machines in that build-
ing. On each countershaft were four crown-face pulleys arranged in
pairs and occupying together a space of about 17 inches. Two of them
were 12 inches in diameter; the other two, 24 inches. The outside
pulleys, one large and one small, were fastened to the countershaft;
the inside pulleys were loose. All four were connected with the driv-

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing shaft by two 4-inch belts, one for the large pulleys and one for the small. When a belt was placed on a tight pulley, the countershaft revolved and operated the machine; when placed on a loose pulley, the pulley revolved around the countershaft without operating the machine. To shift a belt from one pulley to the other of the same size, as from tight to loose or vice versa, a belt-shifting device was provided, the "fingers" of which moved the belt when the lever was moved in one way or another. From this it resulted that a machine could be made to run fast or slow, as might be desired, or could be brought to a standstill by putting both belts on the loose pulleys. It appears, however, that a belt would sometimes shift of its own motion from the fixed pulley to the loose pulley of the same size; and this might happen because the particular countershaft was not in correct alignment with the driving shaft, or because the belt itself was not properly cut and adjusted. Instances of such shifting were not infrequent, and the attention of the foreman had been called to their occurrence.

Just how plaintiff was injured is not altogether clear. He says he was oiling the small loose pulley on one of the machines, which had been started up an hour or two before to be "broken in"; that he was holding the pulley with his left hand and oiling it with his right; that while so engaged the belt from some unknown cause shifted from the tight pulley to the loose; and that his left arm was caught and broken. The negligence of defendant in any of the respects alleged is not very convincingly shown; but we are of opinion that enough appeared, taking the proofs as a whole, to warrant submission of the question to the jury. The accident occurred at night. The height of the countershaft made it necessary for plaintiff to stand on a box in order to reach the pulley. He was between the driving shaft and the machine, and so under or nearly under the moving belt and in close proximity to it. If the belt shifted, as he claims, because of some slight defect in its construction or in the adjustment of the machine, it is quite possible that his arm was drawn in and fractured without fault on his part. Although he had been employed about the plant for some months, helping the machinists in various ways, it seems that he had not done any oiling until two days before in another building; and his testimony tends to show that he was then set at this somewhat hazardous work with little or no instruction, and without warning of its danger. It is argued that he voluntarily went between the driving shaft and the countershaft, and thus beneath the revolving belt; whereas, he should have gone on the other side of the countershaft, and so been in a place of comparative safety. But he says that no one had told him where to stand when oiling a pulley, and it was stated by at least two witnesses that plaintiff's position at the time was the same as that taken customarily by other boys doing similar work. It cannot, therefore, be said that he was chargeable with contributory negligence as matter of law. In short, and without reviewing the circumstances in greater detail, we are constrained to hold that the court below was not in error in refusing to direct a verdict for defendant.

2. The various assignments of error based upon instructions to the

jury, both those given and those refused, require no extended or separate discussion. The case is undoubtedly close on the facts, but it involves no principles of law which are not settled and familiar. We have carefully examined the rulings to which these assignments relate, and are satisfied that they are not open to serious objection. The jury were clearly and correctly told what they must find in order to render a verdict for plaintiff, and we are not persuaded that the rejection of defendant's requests was erroneous or in any wise misleading. Assuming, as we hold, that the proofs presented a question of fact, we are of opinion that the case was not improperly or unfairly submitted.

[3] 3. The E. I. Du Pont de Nemours Powder Company, plaintiff's employer, was succeeded some three months after the accident by the defendant corporation, which was organized about that time, and to which all the property and assets of the powder company were transferred. As part of the consideration therefor the defendant agreed "to assume and discharge all the liabilities, debts, and obligations, contractual or otherwise, of every kind, nature, and description, due or to become due, of the vendor existing on the date of said transfer, except capital stock liability and the funded debt of the vendor hereinbefore specifically mentioned." Whilst the powder company is described as "vendor" in the transfer papers, the transaction was in fact, as recited in the resolutions adopted by the board of directors, "a financial reorganization of the business," with a very large increase of capitalization. There was little, if any, change of ownership or management, and the business went on under the new corporate name the same as before. The old company was continued in existence for certain specific purposes, but it ceased to be a going concern and apparently retained no property in the state of Virginia. In practical effect it was merged or consolidated with the new corporation.

Taking into account the declared purpose for which the defendant company was organized, and its inclusive and unlimited assumption of liability, we think it could be sued directly for the negligence of its predecessor which caused the plaintiff's injury. His cause of action was an obligation which it had plainly agreed to discharge, and no good reason appears for not enforcing its contract. As was said in Langhorne v. Richmond R. Co., 91 Va. 369, 374, 22 S. E. 159, 161, citing a number of cases:

"But the better view seems to be that, when a consolidation has been authorized and made, it confers all the rights, property, and franchises of the old company upon the new or consolidated company, and subjects it to all the liabilities of the old companies; and an action at law may be brought against the new or consolidated company for the debts or torts of the old companies. The question is not whether the consolidation compels a creditor to accept the defendant corporation as a new debtor against his will, or a person who has been injured to resort to a stranger for satisfaction, but whether it empowers the creditor or the person injured to resort, if he desires to do so, in the first instance, to the corporation which by the terms of the consolidation is made liable to him."

Accepting as applicable this salutary principle, we are not disposed to sustain a defense which upon the facts here disclosed seems wholly wanting in merit.

[4, 5] 4. The assignments of error bring up a question of evidence which perhaps should not pass unnoticed. On cross-examination of one of defendant's witnesses it appeared that wire screens were placed around these pulleys some months after the accident, not for the protection of employés, as the witness explained, but to prevent the entrance of dust and particles of cotton. Asked by the court if the screen would not "also operate to protect the man," he replied in the affirmative. The general rule undoubtedly is that, in an action for injuries caused by a machine alleged to be defective, the subsequent alteration or repair of the machine is not competent evidence of negligence in its original construction; and this for the reason that such acts furnish no legitimate basis for an inference of previous neglect of duty. Columbia R. Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; Virginia Wheel Co. v. Chalkley, 98 Va. 64, 34 S. E. 976. Strictly speaking, therefore, the answer of the witness was inadmissible and should properly have been excluded. Inasmuch, however, as it was shown without dispute that these screens were not provided to guard against accident, but for another and necessary purpose, we think the admission of the fact that they incidentally afforded some protection to the employé did not have the mischievous effect which the rule seeks to avert. In no reasonable view of the case does it seem to us that the error in question, cropping up as it did in the course of a long cross-examination, was of such harmful character as to require a reversal of the judgment. In our opinion it should be disregarded.

Affirmed.

---

⚏For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes