DRUG, INCORPORATED, a corporation of the State of Delaware, Defendant Below, Plaintiff in Error, *v.* GRAHAM P. HUNT, Receiver, appointed by the Court of Common Pleas of Hamilton County, Ohio, for the partnership consisting of J. Nevin Roberts and Walker P. Hall, trading under the firm name of Roberts & Hall, Plaintiff Below, Defendant in Error.

(*March* 2, 1933.)

WOLCOTT, Chancellor, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*Hugh M. Morris* and *Ivan Culbertson* for Defendant Below, Plaintiff in Error.

*Aaron Finger* (of Richards, Layton and Finger) and *Charles P. Taft, 2nd,* and *Edward P. Moulinier* (both of the Ohio bar, of counsel on the brief) for Plaintiff Below, Defendant in Error.

Supreme Court, No. 4, June Term, 1932; Writ of Error to Superior Court for New Castle County.

HARRINGTON, J., delivering the opinion of the Court:

The questions raised by the assignments of error and arguments of counsel are:

1. Did Hunt, the plaintiff below, acting as Receiver for Roberts & Hall, have the right to bring this suit, or were his rights as Receiver confined to the territorial limits of the State of Ohio?

2. Was Household Products, Inc., guilty of conversion when it issued the new certificates to Rosenbaum Grain Corporation for the stock originally issued to Dean, Onativia & Company? It then had no notice of the rights of Roberts & Hall but it did not require the production of the old certificates for cancellation; and, as a matter of fact, such stock had previously been sold by the original holders to Roberts & Hall and the certificates therefor duly endorsed, in blank, for transfer, had been delivered to that company.

3. Did the transaction between Household Products, Inc., and Drug, Incorporated, constitute a sale, or in legal effect, a *de facto* merger or combination, of some character, between the two corporations, as the result of which the latter corporation was liable in an action of trover for a prior unlawful conversion committed by the former, or transferring corporation?

█ █ 1. In connection with the consideration of the first question and in addition to the facts just stated, perhaps we should also state that from their verdict the jury necessarily found that after the transfer and delivery of the stock certificates in question to Roberts & Hall, Hunt, the plaintiff below, was appointed Receiver for that firm in the State of Ohio; and that he was expressly authorized to bring this suit by the Court by which he was appointed. Aside from any question of comity, whether he had the right, as Receiver, to bring a suit in any State, other than where he was appointed, depends upon whether under the laws of that State he was a mere equity receiver, or agent of the court appointing him, and without any property

rights or title whatever in the assets of the insolvent firm (*Hale v. Allinson,* 188 *U. S.* 56, 23 *S. Ct.* 244, 47 *L. Ed.* 380; *Converse, Rec., v. Hamilton,* 224 *U. S.* 243, 32 *S. Ct.* 415, 56 *L. Ed.* 749, *Ann. Cas.* 1913*D,* 1292; *Sterrett, Rec., v. Second National Bank of Cincinnati, Ohio,* 248 *U. S.* 73, 39 *S. Ct.* 27, 63 *L. Ed.* 135; *Bernheimer v. Converse, Rec.,* 206 *U. S.* 516, 27 *S. Ct.* 755, 51 *L. Ed.* 1163; *Booth v. Clark,* 17 *How.* 322, 15 *L. Ed.* 164; *Amy v. Manning,* 149 *Mass.* 487, 21 *N. E.* 943; *Murtey v. Allen,* 71 *Vt.* 377, 45 *A.* 752, 76 *Am. St. Rep.* 779; *Day v. Postal Telegraph Co.,* 66 *Md.* 354, 7 *A.* 608; *High on Rec.* [*4th Ed.*] 271) ; or whether, under the Ohio statute, he was an assignee or quasi assignee of a special property right in such assets. If he was a quasi assignee of a special property right in the assets of the bankrupt firm his position was somewhat like a trustee with title and he, therefore, had the absolute right to bring this suit and to ask this court to determine whether such rights had been invaded. 1 *Clark on Rec.,* § *F, p.* 811; 1 *Tardy's Smith on Rec.* (2d *Ed.*), § 371; *High on Rec.* (*4th Ed.*), §§ 241, *a* and 317, *c; Irvine v. Elliott* (*D. C.*), 203 *F.* 82, 103; *Converse, Rec., v. Hamilton,* 224 *U. S.* 243, 32 *S. Ct.* 415, 56 *L. Ed.* 749, *Ann. Cas.* 1913*D,* 1292; *Bernheimer v. Converse, Rec.,* 206 *U. S.* 516, 27 *S. Ct.* 755, 51 *L. Ed.* 1163; *Cooney Co. v. Arlington Hotel Co.,* 11 *Del. Ch.* 286, 301, 101 *A.* 879. This is conceded by the defendant below.

The Ohio statute in question (*Section* 5590, *Rev. Statutes of Ohio,* now *Section* 11897 of the *Gen. Code of Ohio*) provides: "Powers of receiver.—Under the control of the court, the receiver may bring and defend actions in his own name, as receiver, take and keep possession of the property, receive rents, collect, compound for, and compromise demands, make transfers, and generally do such acts respecting the property as the court authorizes."

 To make a receiver a quasi assignee it is not necessary for the statute to specifically vest title in him. In fact,

it has been said that it is sufficient to make him a quasi assignee, by implication, if it gives him the right to sue. *Irvine v. Baker* (*D. C.*), 225 *F.* 834, 837. We need not, however, determine that question as the Ohio statute contains broader provisions than that and in construing it the Supreme Court of that State has expressly held that a receiver appointed in Ohio was "given power, under the control of the court, to take and keep possession of the property, and generally to do such acts respecting the property as the court may authorize"; and, therefore, for all practical purposes, his relation to the property of the corporation for which he was appointed was the same as that which "an assignee would have had." The court also added that on principle as well as authority, "the right of the receiver to the property \*. \* \* was a legal right to its possession." *Cheney v. Maumee Cycle Co.*, 64 *Ohio St.* 205, 60 *N. E.* 207, 209, 210.

The Ohio statute having been so construed in that State, it is apparent that Hunt, as Receiver, had the legal right as a quasi assignee to bring this suit and it is, therefore, unnecessary for us to consider his rights, from the standpoint of State comity.

2. The old stock certificates in Household Products, Inc., though duly endorsed for transfer and delivered by Dean, Onativia & Company to Roberts & Hall had not been transferred to that firm on the books of the corporation; but that was not necessary to make them the legal owners of such stock. *In re Lord & Polk Chemical Co.*, 7 *Del. Ch.* 248, 44 *A.* 775; *Lippman v. Kehoe Sten. Co.*, 11 *Del. Ch.* 190, 98 *A.* 943; *Id.*, 11 *Del. Ch.* 412, 102 *A.* 988; *Bankers' Mortgage Co. v. Sohland*, 3 *W. W. Harr.* (33 *Del.*) 331, 138 *A.* 361.

By the issuance of the replacement certificates to Rosenbaum Grain Corporation, Household Products, Inc., nevertheless, recognized that corporation as the legal owners of such stock and clothed it with all the indicia of

ownership. By this act it, also, necessarily denied and repudiated the rights of Roberts & Hall, as the purchasers and real legal owners of it, and must have cancelled the record of the original issue to Dean, Onativia & Company, as a corporate liability.

Generally speaking, any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it, is a conversion (*Cooley on Torts*, 859; *Hollins v. Fowler*, [1874] *L. R.*, 7 *Eng. & Irish App.* 757) ; and this is true, though the property alleged to have been converted was not applied to the use of the defendant. *Cooley on Torts*, 859; *Hollins v. Fowler*, [1871] *L. R., & Q. B.* 616, *Id., on Appeal*, [1871] *L. R.*, 7 *Eng. & Irish App.* 757; *McPheters v. Page*, 83 *Me.* 234, 22 *A.* 101, 23 *Am. St. Rep.* 772.

In quoting from *Liptrot v. Holmes*, 1 *Kelly* (1 *Ga.*) 381, 391, Judge Cooley (page 858) says:

"The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law a conversion, be it for his own or another person's use."

At common law, shares of stock in a corporation could not be the subject of conversion. This ruling was based on the fact that by reason of their intangible character, they could not be identified or taken into actual manual possession. 11 *Fletcher on Corporations (Per. Ed.)*, §§ 5113, 5114.

The old rule has, however, been generally repudiated by the more modern decisions and under them a corporation may be guilty of converting its own stock and may be subject to an action of trover therefor. *Pardee v. Nelson*, 59 *Utah* 497, 205 *P.* 332, 21 *A. L. R.* 390; 11 *Fletcher on Corporations (Per. Ed.)*, §§ 5113, 5114, 5115; *Withers vs.*

*Lafayette County Bank,* 67 *Mo. App.* 115; *Bond v. Mt. Hope Iron Co.,* 99 *Mass.* 505, 97 *Am. Dec.* 49; *Jones v. Ortel,* 114 *Md.* 205, 78 *A.* 1030; *Ayres v. French,* 41 *Conn.* 151; *Crosby v. Stratton,* 17 *Colo. App.* 212, 68 *P.* 130; 6 *Thomp. on Corps., p.* 218.

In *Withers v. Lafayette County Bank,* 67 *Mo. App.* 115, *supra,* the Court said:

"A corporation itself may interfere with the rights of the stockholder by simply denying them, and thus become liable for conversion."

See, also, *Layman v. Slocomb & Co.,* 7 *Penn.* 403, 76 *A.* 1094, 1095. In that case, the defendant was charged with the conversion of certain stock certificates, and the Chief Justice, in charging the jury, said:

"We may say to you, also, that in determining whether there was a conversion of the certificates by the defendant you may consider any act of control or dominion, if any there was, over the certificates by the defendant without the plaintiff's authority or consent, and in disregard, violation, or denial of his rights as a stockholder of the company."

As was, also, pointed out by the Court in *Haskell v. Middle States Petr. Corp.,* 5 *W. W. Harr.* (35 *Del.*) 380, 165 *A.* 562, the modern rule, making corporate stock the subject of conversion, is particularly applicable when the statutes, as in Delaware (*Section* 16, *General Corporation Law* [*Revised Code* 1915, § 1950]; *Section* 95, *c.* 65 [*Section* 2009] *Revised Code* 1915 [as amended by 33 *Del. Laws, c.* 105]) not only make such stock personal property but, also, make it property that may be identified, attached and sold for the payment of the debts of the owner.

To entitle a plaintiff to recover in an action of trover, however, he must not only allege and prove a general or special property in himself, but he must, also, allege and prove a conversion of such property by the defendant; and a conversion may be alleged either in the proper general terms or by setting out specific facts that clearly establish it. 1 *Chitty's Pl.* 161; 2 *Saund. Pl. & Ev.* 883; 4 *Robinson's*

*Prac.* 615, 616; *Smith v. Godwin,* 24 *E. C. L.* 89; *Howard v. Shepherd,* 67 *E. C. L.* 296; 21 *Ency. Pl. & Pr.* 1074, *etc.*

A demand and a refusal to deliver are usually evidence of a conversion and when the original possession of the defendant is lawful must in most cases be shown at the trial to establish that charge. *Woolley's Del. Pr.,* §§ 1519, 1520; *Shipman's Com. Law. Pl.* 69, 82, 84, 244; 2 *Saund. Pl. & Ev.* 883; 1 *Chitty's Pl.* 156. This rule does not apply, however, when the alleged wrongful act is of such a nature, as to amount, in itself, to a denial of the rights of the real owner; and this is true, though the alleged wrongdoer acted in good faith. 11 *Fletcher on Corporations (Per. Ed.)*, § 5114; *Hollins v. Fowler,* [1871] 7 *Q. B.* 616, *Id., on Appeal,* [1874] *L. R.,* 7 *Eng. & Irish App.* 757; *Levi v. Booth,* 58 *Md.* 305, 42 *Am. Rep.* 332; *Flanders v. Colby,* 8 *Foster* (28 *N. H.*) 34; *Williams v. Merle,* 11 *Wend.* (*N. Y.*) 80, 25 *Am. Dec.* 604; 1 *Chitty's Pl.* 156; 38 *Cyc.* 2011.

The declaration, after alleging the ownership of Roberts & Hall, and their possession of the stock certificates, duly endorsed for transfer, also, alleges "Yet Household Products, Inc., well knowing the said shares of stock to be the property of —— Roberts & Hall —— did not then, or at any time thereafter, deliver the said shares of stock —— to Roberts & Hall —— or to the Plaintiff herein, as Receiver —— although often requested so to do, and has hitherto wholly refused so to do, and afterwards, to-wit: on or about said second day of October, 1929, at the City and State of New York, to-wit: at the County aforesaid, converted and disposed of the shares of stock evidenced by said certificates to its own use."

It, therefore, not only alleges knowledge, on the part of Household Products, Inc., of the rights of Roberts & Hall, and a request and a refusal to deliver such stock either to that firm or to Hunt, as Receiver for them, but, referring to Household Products, Inc., also, alleges "and

afterwards, to-wit, on etc., at etc., converted and disposed of the shares of stock evidenced by said certificate to its own use."

These allegations are followed by the allegation that Drug, Incorporated, the defendant below, assumed all of the liabilities of Household Products, Inc., including the liabilities growing out of the conversion of its stock above referred to.

Drug, Incorporated, claims that, whether it was necessary or not, having alleged knowledge of the rights of Roberts & Hall, and a demand and a refusal to deliver the stock in question, it was necessary to prove those allegations; and that no such proof was produced in the court below.

The conversion by Household Products, Inc., was the material charge in the declaration, and having alleged that, it may be that the other allegations as to knowledge and demand and refusal to deliver, could, therefore, be treated as mere allegations of evidence, and disregarded as surplusage.

It is, however, unnecessary for us to decide that question, as an inspection of the record shows that the testimony of the witnesses, in the court below, is not included in it.

As that conclusion is not refuted by the record before us, or by any specific agreement of the parties, we must assume that the proceedings in that court were regular, and that the allegations of the plaintiff's declaration were, therefore, proved with sufficient particularity for the case to be submitted to the jury.

As a matter of fact, the record does show, however, that the original stock certificates issued to Dean, Onativia & Company by Household Products, Inc., provided on their face that they were "transferable on the books of the corporation by the holder hereof in person, or by a

duly authorized attorney, on the surrender of this certificate properly endorsed."

It is, also, apparent that notwithstanding that provision the replacement certificates were issued to Rosenbaum Grain Corporation without the original certificates being surrendered.

In 6 *Fletcher on Corporations, page* 6327, the author said:

"The non-production of the original certificates is notice to the corporation that a third party may have a superior title to it, and by transferring the stock without it, it becomes liable to any person holding such certificate in good faith and under a superior title, whether it has notice of his rights, or not."

See, also, *Shear Co. v. Wilson (Tex. Com. App.)*, 292 *S. W.* 531, 534; *Allmon v. Salem Bldg. Ass'n*, 275 *Ill.* 336, 114 *N. E.* 170; *First Nat. Bank v. Stribling*, 16 *Okl.* 41, 86 *P.* 512; *First Nat. Bank v. Lanier*, 11 *Wall.* 377, 20 *L. Ed.* 172; *Brisbane v. D. L. & W. R. Co.*, 94 *N. Y.* 204.

This principle is, also, applicable to this case.

3. If the transaction between Household Products, Inc., and Drug, Incorporated, the defendant below, and the appellant in this court, constituted a bona fide sale for value of all of the assets and property of one corporation to another, under *Section 64A* of the *General Corporation Law (Revised Code 1915,* § *1978A,* as amended by 36 *Del. Laws, c.* 135) it is conceded that Drug, Incorporated, would not be liable for the debts or for damages caused by a tortious act committed by the selling corporation before the sale was consummated. 7 *Fletcher on Corporations,* §§ 4751, 4756; 8 *Thompson on Corporations (3d Ed.)*, §§ 60, 63; *McKee v. Standard Minerals Corporation*, 18 *Del. Ch.* 97, 156 *A.* 193; *Ozan Lumber Co., et al., v. Davis Sewing Machine Co. (D. C.)*, 284 *F.* 161; *Id. (D. C.)*, 285 *F.* 395.

In considering the effect of the transaction in question, there are certain provisions of the contract, and of the bill of sale provided for therein, that must be considered:

1. Both corporations agreed to submit the contract executed by them and providing for the transfer to Drug, Incorporated, of all of the assets and property of Household Products, Inc., including its good will as a going concern, to their respective stockholders, for approval.

2. The so-called "purchase price" for the transfer of such assets consisted of stock of Drug, Incorporated, not, however, issued to Household Products, Inc., but directly to its stockholders in exchange for their stock in that company; such exchange being at the rate of one share of Drug, Incorporated, for one and two-fifths shares of Household Products, Inc.

3. Drug, Incorporated, agreed to "deliver an appropriate instrument or instruments in writing, satisfactory in form and content to Household, whereby Drug will assume the payment of all liabilities and obligations of Household and the performance of all unperformed or undischarged obligations on the part of Household to be performed."

In accordance with this provision of the contract, a bill of sale whereby Household Products, Inc., transferred all of its assets and property to Drug, Incorporated, and which instrument was executed by both corporations, contained a covenant whereby Drug, Incorporated, therein designated as the "Purchaser," thereby covenanted and agreed "to pay, satisfy and discharge all of the indebtedness and liabilities of said Household Products, Inc., of any and every kind, direct or contingent" which might be unsatisfied at the date thereof, "save and except only the obligations of the Vendor to its stockholders for its outstanding stock."

From these provisions, it is apparent that the consideration for the transfer of its assets was not paid to Household Products, Inc., but to its stockholders. That the transaction in question did not constitute a sale of the assets of that corporation to Drug, Incorporated, under *Section*

64A of the *General Corporation Laws* is, therefore, apparent. *Finch v. Warrior Cement Corp.*, 16 *Del. Ch.* 44, 141 *A.* 54; *Jones v. Francis,* 70 *Wash.* 676, 127 *P.* 307; *Shadford v. Detroit, etc., Ry.,* 130 *Mich.* 300, 89 *N. W.* 960; *Okmulgee Window Glass Co. v. Frink* (*C. C. A.*), 260 *F.* 159; *Quinn v. American Bank. Assur. Co.,* 183 *Mo. App.* 8, 165 *S. W.* 823; *Fisk v. State Sav. Bank,* 225 *Mich.* 580, 196 *N. W.* 342; *Chicago Santa Fe & Cal. Ry. Co. v. Ashling,* 160 *Ill.* 373, 43 *N. E.* 373; *Id.,* 56 *Ill. App.* 327; 7 *Fletcher on Corps.* 4756.

True, there was a covenant on the part of Drug, Incorporated, to pay all of the debts and "liabilities" of Household Products, Inc., but it is apparent both from the balance sheet produced at the trial and included in the record, as well as from the large block of stock issued to the stockholders of Household Prducts, Inc., that the value of the assets transferred by that corporation to Drug, Incorporated, materially exceeded its liabilities.

The record shows that evidence was produced in the court below from which the jury could have found that Drug, Incorporated, on February 14, 1930, was a going concern, having a corporate existence and substantial assets.

From the contract provisions above referred to, it is, also, apparent that as a result of the transaction between the two corporations Drug, Incorporated, not only took over all of the assets of Household Products, Inc., including its good will, but all of the stockholders of that company became stockholders of Drug, Incorporated, in exchange for their stock in Household Products, Inc. In addition to this, as we have already pointed out, Drug, Incorporated, also, specifically covenanted and agreed to assume and pay all of the debts and liabilities of Household Products, Inc., exclusive of its outstanding stock.

In connection with the effect of the contract in question, Hunt, as Receiver, the plaintiff below, concedes that

*Section* 59 of the *General Corporation Law* (*Revised Code* 1915, § 1973, as amended by 36 *Del. Laws, c.* 135) and *Section* 60 (*Revised Code* 1915, § 1974, as amended by 35 *Del. Laws, c.* 85), providing for corporate mergers, were not in all respects complied with in such contract, but, nevertheless, among other things, contends that there was a substantial or colorable compliance with their provisions; and that, though termed a "reorganization," the transaction in question, was in its legal effect a de facto merger or combination of the two corporations which makes Drug, Incorporated, the defendant below, liable in this action.

It cannot be denied that Hunt, as Receiver, might have sought relief in a Court of Equity, either against the defendant in the court below, or against the stockholders of Household Products, Inc., who received the consideration for the assets transferred by that corporation, and which consideration, certainly so far as creditors were concerned, rightfully belonged to the corporation. *McKee v. Standard Minerals Corp.,* 18 *Del. Ch.* 97, 156 *A.* 193; 8 *Thomp. on Corps.* (3 *Ed.*), § 6075; 44 *Harv. Law Rev.* 262.

While we need not decide that question, according to some authorities, he might, also, have treated the transfer of assets to Drug, Incorporated, as absolutely void, and after procuring a judgment in a court of law against Household Products, Inc., could have seized the assets, so transferred, on execution process issued on that judgment. *McKee v. Standard Minerals Corp.,* 18 *Del. Ch.* 97, 156 *A.* 193; 44 *Harv. Law Rev.* 262; 8 *Thomp. on Corps.* (*3d Ed.*), § 6075.

But whatever other rights Hunt may have had in some other proceeding, under the modern development of the law of corporations, where one corporation transfers all of its assets to another corporation, and payment is made in stock, issued by the transferee directly to the share-holders of the transferring corporation, in exchange for their stock in that corporation, the transferee agreeing to

assume all the debts and liabilities of the transferror, it is, also, well settled that persons having claims against the transferror may, in most cases, at least, proceed at law in the first instance, against the transferee and procure a personal judgment against that corporation; and this is true whether the claim and the action based thereon be in contract or in tort. *E. I. Du Pont de Nemours & Co. v. Smith* (*C. C. A.*), 252 *F.* 491; *Okmulgee Window Glass Co. v. Frink* (*C. C. A.*), 260 *F.* 159; *Wolff v. Shreveport Gas, Electric Light & Power Co.,* 138 *La.* 743, 70 *So.* 789, *L. R. A.* 1916D, 1138; *Chicago, Santa Fe & Cal. Ry. Co. v. Ashling,* 160 *Ill.* 373, 43 *N. E.* 373; *Id.,* 56 *Ill. App.* 327; *Shadford v. Detroit, Y. & A. A. Ry.,* 130 *Mich.* 300, 89 *N. W.* 960; *Quinn v. American Bankers' Assurance Co.,* 183 *Mo. App.* 8, 165 *S. W.* 823; *Jones v. Francis,* 70 *Wash.* 676, 127 *P.* 307; 11 *L. R. A.* (*N. S.*) 1119, *note;* 8 *Thompson on Corporations* (*3d Ed.*), §§ 6065, 6074; 7 *Fletcher on Corporations,* § 4805.

The law courts have applied the above rule in an apparent effort to prevent injustice to creditors or other persons having claims against the transferring corporations; and various theories have been given in support of the rule (44 *Harv. Law Rev.* 260, etc.), but under the facts of this case, it would seem that, so far as creditors are concerned, the theory that there was, in effect, a de facto merger, or combination between the two corporations entering into the contract, is the most reasonable one for us to adopt. *Chicago & J. Elec. Ry. Co. v Ferguson,* 106 *Ill. App.* 356, 358; *Chicago, S. F. & C. R. Co. v. Ashling,* 160 *Ill.* 373, 43 *N. E.* 373; *Id.,* 56 *Ill. App.* 327; *Shadford v. Detroit, Y. & A. A. Ry.,* 130 *Mich.* 300, 89 *N. W.* 960; *Riegel v. Planters' State Bank,* 100 *Okl.* 42, 227 *P.* 105; *Mobley v. Hagedorn Constr. Co.,* 168 *Ga.* 385, 147 *S. E.* 890; *Altoona v. Richardson Gas & Oil Co.,* 81 *Kan.* 717, 106 *P.* 1025, 26 *L. R. A.* (*N. S.*) 651; *State v. Broad River-Power Co.,* 157 *S. C.* 1, 153 *S. E.* 537; *Id.,* 281 *U. S.* 539, 50 *S. Ct.* 401,

74 *L. Ed.* 1023; 8 *Thompson on Corp.* (*3d Ed.*), § 6030; 44 *Harv. Law Rev.* 263; 7 *Fletcher on Corp.*, § 4666.

This conclusion is not inconsistent with *Gott v. Live Poultry Transit Co.,* 17 *Del. Ch.* 288, 153 *A.* 801, because in that case the question of whether there had been a de facto merger, which was answered in the negative, was not raised in connection with a creditor's right to assert a liability against the successor corporation.

Nor is it inconsistent with *Butler v. New Keystone Copper Co.,* 10 *Del. Ch.* 371, 93 *A.* 380, as the stock issued by the transferee corporation in return for the mine transferred in that case was to the transferring corporation and not to its shareholders; the transaction in question, therefore, clearly constituted a sale, though it was decided before *Section 64A* of the *General Corporation Law* was enacted. See *Allied Chemical & Dye Corp. v. Steel & Tube Co. of America,* 14 *Del. Ch.* 1, 120 *A.* 486.

True, in most cases of merger one corporation goes out of existence, and after February 14, 1930, Household Products, Inc., still had a bare technical corporate existence to such an extent that it could have been sued by any person to whom it was liable, either in contract or in tort; but its entire stock issue was held by Drug, Incorporated, to which it had transferred all of its assets, including its good will.

For all practical purposes, it was, therefore, absorbed by Drug, Incorporated, as it was no longer a going concern and its corporate existence little more than a mere shell. The fact that Household Proucts, Inc., still had a corporate existence of that character, therefore, did not prevent the combination in question from operating so far as liability to the transferror's creditors is concerned, just as effectively as if there had been a merger, though the statutory provision relating to mergers had not been fully complied with. *Shadford v. Detroit, Y. & A. A. Ry.,* 130 *Mich.* 300, 89 *N. W.* 960; 8 *Thompson on Corporations* (*3d Ed.*),

§ 6030; 7 *Fletcher on Corporations,* §§ 4660, 4666. See, also, cases above cited.

Having reached that conclusion, it necessarily follows that Drug, Incorporated, was liable in this action for a conversion committed by Household Products, Inc., before its de facto merger or combination with that corporation took place.

It appears from the record that the assets of Household Products, Inc., transferred to Drug, Incorporated, materially exceeded the amount of the judgment recovered against that corporation in the court below.

There is a conflict in the cases but perhaps because the remedy in a court of law, in a case of this character, has some connection, in principle, with the law of fraudulent conveyances, some courts have held that the liability of the transferee corporation is limited to the value of the assets received by it.

In fact, there is a dictum to that effect in *McKee v. Standard Minerals Corporation,* 18 *Del. Ch.* 97, 156 *A.* 193. But under the facts of this case, it is unnecessary for us to determine, or even consider, that question.

For the reasons above given, our conclusion is that there was no error in the refusal of the trial court to direct a verdict for the defendant, or in the instructions given by it to the jury.

The judgment of that court is, therefore, affirmed.

NOTE.—There was a motion for a re-hearing in this case, but, after due consideration, on October 3, 1933, it was denied by the Court.