# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EAN HOLDINGS, LLC
(d/b/a ENTERPRISE RENT-A-CAR),

      Plaintiff,

      v.

NATIONAL AUTO MOVERS, LLC,
a Delaware limited liability company,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N22C-02-051 PAW

Submitted: September 26, 2023
Decided: December 29, 2023

## MEMORANDUM OPINION

*Upon consideration of Defendant's Motion to Dismiss*:
**DENIED.**

Seth A. Niederman, Esq., of FOX ROTHSCHILD LLP, *Attorney for Plaintiff.*

Nicole M. Faries, Esq. and D. Zachary Losco, Esq., of BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC, *Attorneys for Defendant.*

**Winston, J.**

## I.   INTRODUCTION

EAN Holdings, LLC, ("Enterprise") sues National Auto Movers, ("NAM") for conversion, fraud, and unjust enrichment relating to a rental car.  In response, NAM moved to dismiss for failure to state a claim upon which relief can be granted (the "Motion").  Enterprise counters that its Amended and Supplemented Complaint, (the "Complaint") sufficiently pleads the facts and elements for all three claims.  The Court heard argument on the Motion on September 26, 2023.  For the reasons set forth below, NAM's Motion is **DENIED**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Enterprise is a national car rental company, which operates in the State of Delaware through various branch offices located throughout the State.[2]  NAM is engaged in the business of automobile towing and storing.[3]  Enterprise was the record title owner of a 2020 Nissan Altima, (the "Altima") which has a current market value of approximately $21,299.00.[4]

---

[1] The following facts are drawn from the Complaint and documents incorporated by reference. *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020).  Citations in the form of "Ex. __" refer to documents attached to the Complaint.

[2] Compl. ¶ 2.

[3] *Id*. ¶ 3.

[4] *Id*. ¶ 6.  The "current market value" of the Altima was at the time the Complaint was filed.

On May 27, 2021, NAM towed the Altima from a private residence in New Castle, Delaware to its tow yard located in Wilmington, Delaware (the "Tow Yard").[5] Unaware of the Altima's location, in June 2021, Enterprise contacted the police to report the Altima as stolen.[6] On September 7, 2021, NAM commenced a garage keeper's lien.[7] In November 2021, Enterprise was notified by the National Crime Information Center, ("NCIC") that the Altima was no longer active as stolen in the NCIC's system.[8] Enterprise then contacted the Wilmington Police Department which advised that the Altima was towed by NAM to the Tow Yard.[9]

On November 16, 2021, Enterprise contacted NAM, via telephone, to discuss the Altima (the "November Call").[10] During the November Call, an Enterprise representative spoke with NAM employee, "Patty" who informed Enterprise that NAM procured a new title for the Altima because of the amount of time it was in NAM's possession.[11] Patty further claimed that Enterprise owed NAM approximately $30,000 for storage and towing of the Altima, but she would confer with NAM ownership about how Enterprise could purchase back the Altima.[12]

---

[5] *Id.* ¶ 7. The private residence was that of the Altima's original renter who was arrested in May 2021. Compl. ¶ 11.
[6] *Id.* ¶ 10.
[7] *Id*. ¶ 19.
[8] Compl. ¶ 11.
[9] *Id.*
[10] *Id.* ¶ 12.
[11] *Id.* ¶ 14.
[12] *Id*. ¶¶ 14 and 15.

Enterprise then made NAM aware of its ownership rights and inquired about NAM's lack of notice regarding its possession of the Altima.[13]

On January 5, 2022, Enterprise sent a letter, (the "Altima Letter") to NAM explaining its ownership rights in the Altima and warned NAM against taking any further steps that would be inconsistent with Enterprise's ownership.[14] The Altima Letter also stated that it would pay the fair costs for the tow and storage of the Altima, however, it refused to pay the additional fees that NAM charged.[15] On January 10, 2022, Patty and Enterprise had another telephone conversation to discuss the Altima Letter (the "January Call").[16] During the January Call, Patty informed Enterprise of a garage keeper's lien that was filed by NAM on September 7, 2021.[17] Enterprise immediately refuted being notified and demanded all documents and records in relation to the lien.[18] After the January Call, Patty emailed Enterprise an invoice in the amount of $34,850 related to the towing and storage of the Altima.[19] After receiving the invoice, Enterprise continued to contact NAM to negotiate the release

---

[13] Compl. ¶ 12.
[14] *Id.* ¶¶ 16 and 17.
[15] *Id.* ¶ 16.
[16] *Id.* ¶ 18.
[17] *Id.* ¶ 19.
[18] *Id.* ¶¶ 20 and 21.
[19] *Id.* ¶ 22.

of the Altima to Enterprise. NAM failed to respond and engage further with Enterprise.[20]

On February 7, 2022, Enterprise commenced the instant action seeking a declaratory judgment and asserted a conversion claim.[21] In response to Enterprise's discovery requests, NAM produced an affidavit of publication of notice of a garage keeper sale scheduled for January 13, 2022, (the "Sale Affidavit").[22] The Sale Affidavit referred to the anticipated sale of the Altima which was published in the New Castle Weekly on December 29, 2021.[23] Additionally, in response to Enterprise's supplemental discovery requests, NAM disclosed that on February 5, 2022, NAM sold the Altima for $19,000 at a garage keeper's lien sale.[24] NAM failed to forward the Sale Affidavit after learning of Enterprise's interest in the Altima.[25]

## III. **DISCUSSION**

NAM seeks dismissal of the Complaint under Superior Court Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Upon a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all

---

[20] Compl. ¶ 23.
[21] *Id.* ¶ 24.
[22] *Id.* ¶ 30.
[23] *Id.* ¶ 30; Ex. C.
[24] Compl. ¶ 34.
[25] *Id.* ¶¶ 31 and 35. During discovery, Enterprise amended and supplemented its complaint. *See* D.I. 20.

5

reasonable inferences in favor of the non-moving party; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[26]

## A.   COUNT I – CONVERSION

Conversion results from any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.[27]   Before bringing a claim for conversion, if a party was once in lawful possession of the disputed property, the plaintiff must first make a demand upon that party for the return of the property.[28]   However, this requirement is excused when the alleged wrongful act is of such a nature as to amount, in itself, to a denial of the rights of the real owner.[29]

NAM argues that Enterprise's conversion claim "should be dismissed because [it] failed to allege well-pleaded facts demonstrating either a demand . . . for the return of the Altima, or any wrongful act on the part of NAM."[30]   Neither of those arguments succeed.   Enterprise pleads that demands were made to NAM for the Altima's return during the November and January Calls, and in the January Letter.[31]

---

[26] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holding, LLC*, 27 A.3d 531, 535 (Del. 2011).
[27] *CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns LLC*, 2008 WL 2586694 at *2 (Del. Super. June 6, 2008) (citing *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).
[28] *Id.*
[29] *Id*.
[30] Def.'s Mot. to Dismiss ¶ 7.
[31] Compl. ¶¶ 12-23.

In addition, during the parties correspondence, Enterprise alleges it attempted to negotiate "a fair figure to release the Altima . . . ."[32] Ultimately, despite Enterprise's continued attempts to secure the Altima, "NAM failed to respond and engage further with Enterprise."[33] Even if a demand was not sufficiently pled, the Court cannot determine at this stage whether the conversion, if any, was of a nature that would justify excusing the demand requirement in this case.[34]

Turning the elements of conversion, a conversion claim withstands a motion to dismiss where a plaintiff alleges it had: (1) a property interest in the disputed property; (2) a right to possession of the property; and (3) the property was converted, in that the defendant wrongfully possessed or disposed of the property as if it were their own.[35] Enterprise pleads all three elements. NAM argues that because it possessed the authority to sell the Altima under 25 *Del. C.* § 3901, Enterprise's allegations that NAM wrongfully possessed the Altima are baseless. Whether NAM met the statutory requirements to sell the Altima is not appropriately addressed at this stage. The allegations set forth in the Complaint are sufficient to

---

[32] *Id.* ¶ 23; *see also*, *Id.* ¶ 14 (alleging NAM stated it would confer "about how Enterprise could purchase the Altima back from NAM"); *Id.* ¶ 16 (alleging Enterprise's Altima Letter explained that Enterprise would pay the fair cost of towing and storing the Altima but refused to pay exorbitant storage fees).
[33] *Id.* ¶ 23.
[34] *CIT Commc'ns Fin. Corp.,* 2008 WL 2586694, at * 2.
[35] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (citations omitted).

state a conversion claim, and it is reasonably conceivable that Enterprise is entitled to recover.

## B.   COUNT II – FRAUD

To establish a claim for fraudulent concealment, a plaintiff must show: (1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) the defendant acted with scienter; (3) an intent to induce the plaintiff's reliance upon the concealment; (4) causation; and (5) damages resulting from the concealment.[36]   NAM generally argues that Enterprise's fraudulent concealment claim must be dismissed because Enterprise failed to plead the elements and failed to meet the particularity pleading standard.[37]

As an initial matter, when asserting claims of fraud, "[t]he circumstances constituting fraud … shall be stated with particularity," however, malice, intent, knowledge, and other condition of mind of a person may be averred generally.[38] There is no dispute that Enterprise alleges that it made NAM aware of Enterprise's ownership interest in the Altima during the November Call, January Call and via the Altima Letter.  NAM contends, however, the allegations are not sufficient because the November and January Calls are not substantiated by documentation.  To the

---

[36] *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).
[37] Def.'s Mot. to Dismiss ¶ 20.
[38] Super. Ct. R. 9(b).

contrary, at this stage, Enterprise need not substantiate these allegations with documentation.[39] Therefore, those allegations satisfy the pleading requirement.

As to the first element, NAM argues that Enterprise failed to plead any affirmative duty of NAM to notify Enterprise of NAM's possession or sale of the Altima. Generally, there is no duty to disclose a material fact or opinion, unless the defendant had a duty to speak.[40] Enterprise claims that NAM failed to provide Enterprise with the statutorily required notice of NAM's garage keeper's action, despite having actual or constructive knowledge that Enterprise owned the Altima.[41] In response, NAM contends that it "took all statutory steps required to notify interest holders in the Altima of the pending sale."[42] Whether NAM met the statutory requirements cannot be addressed at the motion to dismiss stage. Accordingly, NAM's argument fails because a genuine dispute exists. It also fails because Enterprise sufficiently pleads the first element.

NAM next argues that Enterprise also failed to plead reliance on NAM's alleged concealment. That argument also fails. Enterprise pleads that NAM led Enterprise to believe that NAM was still in possession of the Altima and would

---

[39] Whether NAM was unaware of Enterprise's ownership interest in the Altima due to it being fitted with a stolen license plate or engaged in due diligence to ascertain the owner of the Altima are matters for trial, not a motion to dismiss.

[40] *Nicolet, Inc. v. Nutt*, 525 A.2d at 149. Also, once Enterprise asked during its conversations with NAM, NAM had an obligation to answer truthfully. *Id*.

[41] Compl. ¶ 47.

[42] Def.'s Mot. to Dismiss ¶ 23.

continue to possess it until the parties reached an agreement about the towing and storage fees.[43] Specifically, Enterprise pleads that during the November Call, NAM stated it would confer with NAM's ownership on how Enterprise could buy the Altima back.[44] Similarly, even after advising Enterprise of the garage keeper's lien, NAM emailed Enterprise the "alleged current balance due and owing to NAM for the towing and storage of the Altima."[45] NAM also contends Enterprise "failed to make a showing of damages caused by NAM's concealment."[46] Enterprise claims it suffered damages as result of NAM's conduct and sale of the Altima[47] which may be pled generally.[48] That is sufficient at the pleading stage.

Finally, Rule 9(b) requires all allegations of fraud to be pled with particularity.[49] In order to meet the particularity requirement, a plaintiff must plead the time, place and contents of the alleged fraud, as well as the identity of the person committing fraud.[50] The purpose of Rule 9(b) is to put the adversary on notice so that the adversary can prepare a defense.[51] Enterprise's claim is plead with

---

[43] Compl. ¶¶ 49 and 50.
[44] *Id.* ¶ 14.
[45] *Id.* ¶ 22.
[46] Def.'s Mot. to Dismiss ¶ 27.
[47] Compl. ¶¶ 41 and 42.
[48] Super. Ct. R. 9(g).
[49] Super. Ct. R. 9(b).
[50] *KnighTeck, LLC v. Jive Commc'ns, Inc.* 225 A.3d 343, 351 (Del. 2020) (citations omitted).
[51] *Id*.

particularity as required under Rule 9(b).  As set forth in the Complaint, Enterprise conveyed, via phone calls, and the Altima Letter, the time, place and contents of the alleged fraud, as well as the identity of the person committing the fraud.  Enterprise has, therefore, stated a claim for fraud.

### C.     COUNT III – UNJUST ENRICHMENT

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[52]  The elements of unjust enrichment include: (i) an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law.[53]  Applying this standard, Enterprise sufficiently pleads each element of an unjust enrichment claim.

Enterprise alleges that: (i) NAM was enriched when it sold Enterprise's Altima;[54] (ii) Enterprise was impoverished because Enterprise lost the ability to use and rent the Altima to its customers;[55] (iii) Enterprise's impoverishment relates to the enrichment;[56] and (iv) there was no justification for NAM to sell and retain the

---

[52] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).
[53] *Windsor I, LLC v. CWCapital Asset Mgmt LLC*, 238 A.3d at 875 (citing *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quotations omitted)).
[54] Compl. ¶ 54.
[55] *Id*. ¶ 55.
[56] *Id*. ¶ 56.

Altima sale proceeds.[57] As to the fifth element, if Enterprise alleged an absence of a remedy at law, then this Court would not have jurisdiction.[58] Enterprise, therefore, does not have to plead absence of a remedy at law.

Accepting all well-pleaded allegations as true and construing them in a light most favorable to Enterprise, the Court finds Enterprise demonstrated a reasonably conceivable set of facts that NAM secured itself a benefit at Enterprise's detriment.

## IV.   CONCLUSION

For the reasons stated herein, NAM's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Patricia A. Winston*
**Patricia A. Winston, Judge**

---

[57] *Id.* ¶ 57.
[58] *Grace v. Morgan,* 2004 WL 26858, at \*1 (Del. Super. Jan. 6, 2004) .