Patrick J. O'MALLEY and Leatha S. O'Malley, on behalf of themselves and all others similarly situated, Plaintiffs Below, Appellants,

v.

James R. BORIS, Stephen McConahey, Daniel D. Williams, Stanley Fallis, David Greene, Arthur McGivern, John Sullivan, Janet Reali, Thomas Reedy, Homer J. Livingston, Jr., William Daley, William Springer, William Esrey, C. Michael Viviano, Craig M. Black, Aldo Bonfiglio, Florence Z. Enders, R. Gerald Canning, Everen Capital Corporation, Inc., a Delaware corporation, Everen Securities Holding, Inc., a Delaware corporation, Everen Securities, Inc., a Delaware corporation, Everen Clearing Corporation, a Delaware corporation, Wheat First Butcher Singer, Inc., a Virginia corporation, Wheat First Securities, Inc., a Virginia corporation, Mentor Investment Group, Inc., a Virginia corporation, Mentor Distributors, Inc., a Virginia corporation, Mentor Investment Group, L.L.C., a Virginia Limited Liability Company, Cash Resource Trust, a Massachusetts Business Trust, Daniel J. Ludeman, Arnold H. Dreyfuss, Thomas F. Keller, Louis W. Moelchert, Jr., Stanley F. Pauley, Troy A. Peery, Jr., Peter J. Quinn, Jr., Paul F. Costello, Terry L. Perkins, Marshall B. Wishnack, Richard J. Rossi, Charles W. Grant, John G. Davenport, R. Preston Nuttall, Theodore Price and Allan F. Westcott, Defendants Below, Appellees.

No. 59, 1999.

Supreme Court of Delaware.

Submitted: Sept. 8, 1999.
Decided: Dec. 8, 1999.

William Prickett, Ronald A. Brown, Jr., and Elizabeth A. Wilburn, of Prickett, Jones, Elliott & Kristol, Wilmington, Delaware; Arthur T. Susman (argued), Charles R. Watkins, and Robert J. Emanuel, of Susman & Watkins, Chicago, Illinois, for appellants.

Stephen E. Herrmann, of Richards, Layton & Finger, Wilmington, Delaware; A. Robert Pietrzak (argued), and Laurel J.

Southworth, of Brown & Wood, LLP, New York City, for appellees Everen Capital Corporation, Everen Securities Holdings, Inc., Everen Securities, Inc., Everen Clearing Corp., and the Everen Director Defendants.

Kevin R. Shannon, and Brian C. Ralston, of Potter, Anderson & Corroon, LLP, Wilmington, Delaware; Paul Gonson (argued) and Stavroula Lambrakopoulos, of Kirkpatrick & Lockhart, LLP, Washington, DC, for appellees Wheat First Butcher Singer, Inc., Wheat First Securities, Inc., Mentor Investment Group, Inc., Mentor Investment Group, L.L.C., Mentor Distributors, Inc., Cash Resource Trust, Daniel J. Ludeman, Arnold H. Dreyfuss, Thomas F. Keller, Louis W. Moelchert, Jr., Allan F. Westcott, Stanley F. Pauley, Troy A. Peery, Jr., Peter J. Quinn, Jr., Paul F. Costello, Terry L. Perkins, Marshall B. Wishnack, Richard J. Rossi, Charles W. Grant, John G. Davenport, R. Preston Nuttall, and Theodore Price.

Before VEASEY, C.J., WALSH and BERGER, JJ.

BERGER, Justice:

In this appeal we consider the adequacy of a brokerage firm's disclosures to its clients. Appellants claim that they were injured when the broker switched their money market "sweep" account to a new fund without fully disclosing that the firm was benefitting from the transfer. The Court of Chancery dismissed the Amended Complaint, finding that the prospectus and notification letter "strongly implied" the nature of the broker's interest, and holding that the disclosures were adequate as a matter of law. We disagree. The implications to be drawn from the disclosures are not obvious and, even if they were, implications rarely suffice as substitutes for express statements of fact. The Court of Chancery erred in deciding this mixed question of fact and law without an evidentiary record. Accordingly, appellants' state law claims must be reinstated.

## I. Factual and Procedural Background

Patrick and Leatha O'Malley maintain an account with Everen Securities, Inc., a full services brokerage firm. Before November 1996, one of the services Everen provided was money market sweep accounts managed by Zurich Kemper Investments, Inc. Everen linked the customers' brokerage accounts to the sweep accounts, and any cash in the brokerage accounts periodically was "swept" into the designated Kemper fund. As a result, the customers were assured that their money was earning interest when not invested in securities.

Everen's choice of money market funds for its sweep accounts changed after it, and related companies, entered into a joint venture agreement (the "JVA") with Mentor Investment Group, Inc. and its affiliates (collectively "Mentor") to manage certain Mentor funds. Under the JVA, in exchange for a 20.2% interest in the venture, Everen agreed to transfer its clients' sweep accounts to money market funds managed by Mentor. Everen's interest in the venture could increase to as much as 50% depending on the extent to which Everen's customers invested in Mentor funds.

By letter dated September 23, 1996, Everen notified its customers that, unless instructed to the contrary, it would switch their sweep accounts to funds managed by Mentor on November 1, 1996. Everen sent a prospectus for the Mentor money market funds with the so-called "negative response" letter. Neither document explained how Everen acquired its interest in the venture, and the O'Malleys did not object to the switch.

The O'Malleys allege that they would not have approved the switch had they known that Everen was using the transfer of its customers' assets to acquire its 20.2% interest in the venture. The Amended Complaint alleges that Everen and its directors breached their fiduciary duties of disclosure and loyalty by acting

in their own interest without full disclosure. The complaint asserts claims of aiding and abetting breaches of fiduciary duty against Mentor, several Everen affiliates, and those affiliates' directors. In addition, the complaint raises several claims for alleged violations of the federal securities laws and one claim for breach of contract. The Court of Chancery dismissed all counts of the Amended Complaint for failure to state a claim, but the O'Malleys only appeal the dismissal of their state law fiduciary duty claims and the related aiding and abetting claims.

## II. Discussion

### A. Federal Preemption

■ Before considering the O'Malleys' state law claims, we must address the question of federal preemption. Under the Supremacy Clause of the United States Constitution[1], state law is preempted in the following circumstances:

> first, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law; second, when it is clear, despite the absence of explicit preemptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby "left no room for the States to supplement" federal law; and, finally, when compliance with both state and federal law is impossible or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[2]

■ The Securities Exchange Act of 1934[3] regulates the securities industry, including broker-dealers. A rule of the National Association of Securities Dealers, Inc. authorizes the use of negative response letters to notify clients of changes in sweep accounts. The rule specifies the information that must be included in such a letter and the amount of time the customer must be given to object.[4] The Securities and Exchange Commission approved the rule, finding that negative response letters allow the "timely and efficient execution of . . . bulk exchanges without compromising investor protections. . . ."[5] From this regulatory history, appellees argue that the state law disclosure obligations alleged in the complaint are preempted because they are an obstacle to the timely and efficient transfer of sweep accounts.

For support, appellees primarily rely on *Guice v. Charles Schwab & Co.*,[6] and other similar cases in which courts have found preemption based on direct conflicts between federal rules and state laws. *Guice* involved disclosures about "order flow payments" that retail brokers receive for routing their customers' orders to wholesale dealers. Before 1993, the SEC rule relating to order flow payments required only that brokers (i) disclose the fact that they were receiving payments; and (ii) notify customers that details would be provided on written request.[7] In 1993, the SEC proposed an amended rule that, among other things, would have required brokers to include on the customers' confirmation statements the amount of any order flow payments the brokers received for each transaction. After public comment, the SEC eliminated that proposed requirement, finding that it would be extremely burdensome and would "entail expenses

1. U.S. Const. art. VI, cl. 2.

2. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) (internal citations omitted).

3. 15 U.S.C. §§ 78a–78mm.

4. NASD Rule 2510(d)(2).

5. SEC Release No. 34–31558, 1992 WL 361626, 1992 SEC LEXIS 2973 at *6 (1992).

6. 89 N.Y.2d 31, 651 N.Y.S.2d 352, 674 N.E.2d 282 (1996).

7. SEC Rule 10b–10.

disproportionately high in relation to the potential benefits to customers."[8] The *Guice* plaintiffs were claiming that state law required the very order flow payment disclosures that the SEC had considered requiring, but rejected as unworkable. Given this regulatory history, the *Guice* court found a direct conflict between state and federal law that resulted in preemption.

We find no conflict preemption here because full disclosure of Everen's interest in the Mentor funds would not interfere with the purpose or effectiveness of the NASD rule allowing negative response letters. The NASD rule addresses a problem in obtaining customer authorizations. Brokers generally must obtain written authorization from their clients before making discretionary transfers.[9] When brokers transfer sweep account funds for all of their clients, the process of obtaining approvals from every customer can be "extraordinarily burdensome."[10] The NASD rule resolves this problem by allowing negative response letters to substitute for written authorizations in specified bulk transfers. The rule mandates certain disclosures about the transfer, but it does not purport to create a "safe harbor." Since additional disclosure requirements concerning the broker's self-interest would be the same for all customers, they would not be unduly burdensome or otherwise interfere with the purpose of the rule. We conclude, therefore, that the O'Malleys' state law claims are not preempted by federal law.

**B. Fiduciary Duty Claims**

The relationship between a customer and stock broker is that of principal and agent.[11] The broker, as agent, has a duty to carry out the customer's instructions promptly and accurately. In addition, the broker must act in the customer's best interests and must refrain from self-dealing unless the customer consents, after full disclosure.[12] These obligations at times are described as fiduciary duties of good faith, fair dealing, and loyalty.[13] They are comparable to the fiduciary duties of corporate directors, and are limited only by the scope of the agency.[14]

In this case, the O'Malleys gave their agent relatively little discretionary authority, but the choice of sweep account funds was an investment decision that Everen made for its customers. As such, it is a decision for which Everen is accountable under fiduciary standards. The O'Malleys allege that Everen and its directors breached their duty of loyalty by switching the sweep account funds for Everen's benefit. They allege that their failure to object to the switch does not constitute consent because they were not told how Everen acquired its interest in the venture with Mentor. This lack of information also forms the basis for the O'Malleys' claim that Everen and its directors breached their fiduciary duty of disclosure. The O'Malleys' remaining claims, against Mentor and affiliates, are for aiding and abetting Everen's alleged breaches of fiduciary duty.

Each of these claims directly or indirectly turns on the adequacy of Everen's dis-

---

8. *Guice*, 651 N.Y.S.2d 352, 674 N.E.2d at 288.

9. NASD Rule 2510(b).

10. SEC Release No. 34–31360, 1992 WL 361626, 1992 SEC LEXIS 2756 at *5 (1992).

11. *New York Stock Exchange v. Pickard & Co.*, Del.Ch., 274 A.2d 148 (1971).

12. *See Restatement (Second) Agency* §§ 383, 387, 389 (1958); *Science Accessories v. Summagraphics*, Del.Supr., 425 A.2d 957 (1980).

13. *See Summagraphics*, 425 A.2d at 962. *See also Schock v. Nash*, Del.Supr., 732 A.2d 217, 225–26 (1999) (describing fiduciary duties of agent where agent holds power of attorney for principal); *Johnson v. Carmer*, Del.Supr., 156 A.2d 499, 503 (1959) (describing fiduciary duties of agent in context of business venture).

14. *See Summagraphics*, 425 A.2d at 962.

closures about its interest in the venture. Everen's negative response letter says little; it simply refers the reader to the attached prospectus for information about its ownership interest in Mentor. The prospectus states:

> ... [I]t is expected that promptly after [the] reorganization, EVEREN Securities, Inc. will acquire 20% of the outstanding shares of Mentor Investment Group. EVEREN may thereafter acquire additional shares in Mentor Investment Group (not to exceed an additional 30% of Mentor Investment Group's outstanding shares) depending principally on the amount of assets in investment companies sponsored by Mentor Investment Group or it affiliates (including the Funds) attributable to shares held by clients of EVEREN.

The Court of Chancery found that this language adequately discloses the nature of Everen's interest in the Mentor venture since it explains that Everen's ownership will increase if its clients increase their investment in Mentor. In other words, Everen will benefit from bringing its customers to Mentor. The prospectus does not discuss what Everen contributed in exchange for its initial 20.2% share in the venture, but the Court of Chancery apparently found that omission to be immaterial because the equity-for-customers arrangement was strongly implied.

■■■ It is settled law in the corporate context that directors must disclose all material facts when seeking stockholder action,[15] and that materiality is measured by the following standard:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... It does not require proof of a substantial likelihood that disclosure of the omitted fact would

have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.[16]

We adopt this standard, which is consistent with the "full disclosure" mandated for agents, to evaluate the O'Malleys' disclosure claims.

The omitted information, in this case, is the fact that Everen paid for its interest in the venture by agreeing to transfer its clients' accounts to Mentor funds. The significance of that omission depends, in part, on the information that was disclosed—that Everen had a 20.2% interest in the venture at the outset and that Everen's interest would increase with any increase in the amounts that Everen's customers invested in Mentor funds. The question is whether reasonable investors, knowing that Everen stood to profit from the switch in sweep account funds, would consider it important to know what Everen exchanged for its initial share in the venture. If they would, the remaining question is whether something less than a direct statement of the material facts satisfies a broker's fiduciary duties to its customers.

■■■ On the first question, we are satisfied that the claim withstands a motion to dismiss. The determination of materiality is a mixed question of fact and law that generally can not be resolved on the pleadings.[17] Since Everen allegedly controls approximately $3.1 billion of its customers' money in sweep accounts, those customers might consider it important to know the basis for Everen's choice of sweep account funds. The disclosed fact that Everen will participate in Mentor's profits gives part, but not all, of the answer. The O'Malleys

---

**15.** *Malone v. Brincat*, Del.Supr., 722 A.2d 5, 11 (1998).

**16.** *Rosenblatt v. Getty Oil Co.*, Del.Supr., 493 A.2d 929, 944 (1985).

**17.** *Branson v. Exide*, Del.Supr., No. 457, 1992, Holland, J. (1994), Order at 2 (available at 1994 WL 164084).

allege that it would have been significant also to know that Everen used the transfer of its clients' money to buy its share of the venture. We cannot say that a reasonable investor would not share the O'Malleys' view. The financial impact on each investor's sweep account may be minimal, but the fact that the broker used the investor's money to advance its own interests may be important not only to the choice of sweep accounts, but also to the investor's choice of brokers. At the very least, this issue must be developed factually before the materiality of the omitted information may be assessed properly.

■ Assuming for present purposes that the information about Everen's investment in Mentor is material, the remaining question is whether anything less than express statements of fact will satisfy the fiduciary duty of full disclosure. The Court of Chancery found that, from the information that was disclosed, a reasonable investor could not miss the point that Everen was using its customer base to participate in the venture with Mentor. We think that full disclosure requires more than strong inferences. Investors should not be required to correctly "read between the lines" to learn all of the material facts relating to the transaction at issue. While there may be cases where the disclosures are adequate because the undisclosed information inescapably follows from the disclosed facts, this is not such a case. The disclosures about Everen's interest in Mentor leave open at least two reasonable possibilities as to how Everen acquired its interest—by investing its own money or by transferring its clients' money. Under these circumstances, the information about how Everen acquired its interest in Mentor cannot be deemed to have been disclosed. Accordingly, the O'Malley's disclosure claim must be reinstated.

Our decision on the disclosure claim controls all the remaining state law claims. The duty of loyalty claim was dismissed on the theory that the O'Malleys consented to the switch in sweep accounts after full disclosure. If their consent was invalid because it was based on inadequate disclosures, their duty of loyalty claim remains. Similarly, the aiding and abetting claims were dismissed because there were no underlying breach of fiduciary duty claims. With the restoration of the breach of fiduciary duty claims, the aiding and abetting claims also must be reinstated.

### III. Conclusion

Based on the foregoing, the decision of the Court of Chancery dismissing the state law claims for breach of fiduciary duty and aiding and abetting breaches of fiduciary duty is reversed and the matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.