# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LEON A. MALCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0152-MTZ |
| | ) | |
| RAPPI, INC. and SEBASTIAN MEJIA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED VERIFIED COMPLAINT</u>

WHEREAS, the Court having duly considered the allegations in Plaintiff Leon A. Malca's First Amended Verified Complaint (the "Amended Complaint") and Defendants Sebastian Mejia and Rappi, Inc.'s Motions to Dismiss the Amended Complaint (the "Motions"), as well as the briefs submitted in support thereof and in opposition thereto, it appears that:[1]

A.     Plaintiff Leon Malca is a known art collector and businessman. Defendant Sebastian Mejia is an executive officer and director of two Delaware corporations:  (1) nonparty Grability, Inc. ("Grability"), and (2) Defendant Rappi, Inc. ("Rappi," and together with Mejia, "Defendants"), which spun off from Grability in 2016.  Grability originally launched as a grocery delivery mobile app,

---

[1] Citations in the form of "Am. Compl. —" refer to the Amended Complaint, available at Docket Item ("D.I.") 40.  Citations in the form of "Hr'g Tr.—" refer to the transcript of the December 3, 2020 argument on the Motions, available at D.I. 73.

and, through Rappi, has evolved into a platform for the delivery of "everything" for Latin American consumers.[2]

B.     Malca and Mejia met in 2010 and developed a close friendship. In 2011, Mejia contemplated investing in Grability—at the time an emerging technology platform in Colombia that was majority owned and controlled—and using it to create a grocery delivery service. Without means of his own, Mejia sought Malca's financial backing. Malca agreed and helped Mejia develop a business plan and finance the investment.

C.     The 2011 idea took shape in early 2013. Malca and Mejia negotiated the size of the equity stake and its price. Mejia emphasized "that Malca's investment would finance the company's software development and the initial operations of the company and was of critical importance."[3]  Mejia explained Grability would eventually be incorporated in Delaware. On March 23, Mejia gave Malca a "Business Proposition" for the new company that reflected the terms of Malca's investment, which I refer to as the "Investment Agreement."[4]  They agreed that Malca would contribute $300,000 in two parts: (1) the first $150,000 as a loan from Malca to Mejia, so that Mejia could purchase his own Grability shares upon its

_____

[2] Am. Compl. ¶ 3.

[3] *Id.* ¶ 34.

[4] *Id.* ¶ 42.

2

incorporation; and (2) the other $150,000 as Malca's investment for his own Grability shares. Malca and Mejia agreed to register all the Grability shares in Mejia's name, and that Mejia would hold Malca's Grability shares "as Malca's agent, nominee and/or fiduciary."[5] Mejia told Malca, "My success will be yours and I assume this as a great responsibility and commitment to you."[6]

D.    The parties performed under the Investment Agreement. Malca transferred $300,000 to Mejia. Mejia used Malca's $150,000 loan to purchase 22.5% of Grability's shares for himself. Mejia then used the remaining $150,000 to purchase an additional 11.2% for Malca.

E.    As Grability grew, Mejia acknowledged the significance of Malca's investment. Mejia routinely consulted with Malca about Grability's business; provided Malca with detailed reports about Grability's progress and clients; and affirmed that he continued acting as Malca's agent, nominee and/or fiduciary. The men also worked together to raise additional funding. As other investors supplied funding, Mejia and Malca's Grability positions were diluted. Mejia kept Malca apprised of the dilutions and continued to acknowledge that he held Malca's position for him. On December 7, 2015, Mejia acknowledged Malca's equity in Grability as diluted to 8.95%.

---

[5] *Id.* ¶ 6; *accord id.* ¶¶ 11, 14, 49.

[6] *Id.* ¶ 7.

3

F.       In February of 2016, as Grability's Executive Officer and Director, Mejia announced Grability was spun off and converted into Rappi (the "Conversion").  Mejia told Grability's shareholders:

> What does this mean for you?  You are now a shareholder in Rappi Inc.  Why?  Grability Inc. was the majority shareholder in Rappi Colombia and Rappi Mexico.
>
> How much of Rappi Inc do you own?  Grability Inc shareholders own 86.8% of the combined Rappi Colombia and Rappi Mexico entities, which means that you will own a slightly lower percentage of Rappi Inc than what you now own in Grability Inc. . . . Your ownership in Grability Inc will be slightly diluted?  Why?  Rappi Colombia and Rappi Mexico were not wholly owned subsidiaries.  Other (non-Grability) shareholders in those entities have agreed to roll-up their ownership in the Rappi entities into Grability Inc.  Total dilution is 6.9%. . . .
>
> What do you need to do?  We are sending you paperwork to sign for Rappi Inc. . . . Please find attached the new fully-diluted cap tables for Rappi Inc.[7]

Malca alleges that through the Conversion, Grability shareholders became Rappi shareholders in what Mejia described to Malca as a "Roll-Up."[8]  Malca alleges his Grability shares converted into proportionate Rappi shares in the Roll-Up, and that Mejia affirmed to Malca that he held a stake in Rappi.[9]

---

[7] *Id.* ¶ 53 (omissions in original) (emphasis omitted).

[8] *Id.* ¶¶ 54–55.

[9] *Id.* ¶ 55.  Defendants dispute whether the Roll-Up occurred as alleged.  Defendants contend the Grability shares did not simply convert into Rappi shares, but that some Grability stockholders had the option to capitalize Rappi and receive equity ownership in return.  *See* D.I. 61 at 3–5; Hr'g Tr. 11–17.  Malca has pled that the Roll-Up occurred and that Mejia acknowledged his ownership in Rappi.  *See* Am. Compl. ¶¶ 53–56; Hr'g Tr. 37–

G.     In April 2019, SoftBank Group Corp. ("SoftBank") announced an investment of up to $1 billion in Rappi, including the purchase of $400 million in Rappi shares and the buyback of $600 million in shares from existing Rappi shareholders (the "SoftBank Tender").  Malca informed Rappi he wanted to participate in the SoftBank Tender, but Rappi evaded Malca's requests.  Even still, Rappi and Mejia continued to acknowledge that Malca held a stake in Rappi.

H.     In July, Mejia, allegedly acting on Rappi's behalf, claimed Malca did not own any Rappi shares, beneficially or otherwise.  Rappi did not renounce Mejia's assertion.  Sidelined, Malca was unable to participate in the SoftBank Tender, which closed in August.  Malca claims the loss of this opportunity cost him $30 million.  Malca also claims Mejia has taken Malca's Rappi shares for himself, depriving Malca of the ability to sell or realize the future value of his shares.

I.     There is no meaningful dispute about Malca's ownership of Grability shares.  Rather, the dispute is limited to whether and how the Grability shares afforded Malca the opportunity to hold Rappi shares through the Conversion and Roll-Up.  Malca alleges that, as a Grability stockholder via the Investment Agreement, the Roll-Up automatically secured him equity in Rappi.  Specifically,

---

43. I take Plaintiff's factual allegations as true, as I must at this stage.  Whether the Grability shares simply converted into Rappi shares, or whether Malca was wrongly deprived of the opportunity to acquire Rappi shares by virtue of his beneficial ownership of Grability shares, are questions of fact to be borne out in discovery.

5

Malca alleges he is entitled to 33.2%, or 600,256, of the Rappi shares that Mejia purports to own, adjusted upward for transfers or sales.

J.    Malca filed this action in March 2020.[10]    On July 7, he filed the Amended Complaint.[11]  Count I seeks a declaratory judgment that Malca owns at least 600,256 Rappi shares.  Count II seeks a declaratory judgment that Mejia breached the Investment Agreement.  Count III seeks a declaratory judgment that Mejia and Rappi committed conversion "by failing to keep accurate books and records, refusing to acknowledge Plaintiff Malca's ownership interest, intentionally blocking Malca from using his shares in the SoftBank Tender, and continuing to intentionally block Malca from accessing his shares from when the SoftBank Tender closed up to today."[12]  Count IV asserts that Mejia was unjustly enriched "[b]y keeping all of the Rappi shares acquired in the Rappi Conversion for himself."[13] And Count V seeks a declaratory judgment that Mejia breached his fiduciary duties to Malca, both in his fiduciary role under the Investment Agreement and in his fiduciary role as an officer and director of Rappi.  In addition to various declaratory judgments, Malca seeks a permanent injunction requiring Rappi and Mejia to register and/or issue shares in Malca's (or his designee's) name; to update Rappi's

---

[10] *See* D.I. 1.

[11] *See generally* Am. Compl.

[12] *Id.* ¶ 91.

[13] *Id.* ¶ 96.

books and records to reflect Malca's (or his designee's) ownership interest and correct Mejia's ownership stake accordingly; and preventing Mejia and Rappi from selling, transferring, or hypothecating Malca's Rappi shares. Malca also requests that the Court impose a constructive trust on at least 600,256 Rappi shares that Mejia is holding out as his own. Finally, Malca seeks fees and costs.

K. Both Defendants moved to dismiss on August 31.[14] The parties briefed the Motions,[15] and I heard oral argument on December 3.[16]

L. The standard for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is well established.[17] In considering the Motions, I must accept as true all well-pled facts and inferences that can reasonably be drawn therefrom. "[D]ismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[18] A motion to dismiss will be granted only if "it appears with reasonable certainty that the plaintiff could not prevail on any set of facts that can be inferred from the pleading."[19]

---

[14] *See* D.I. 46; D.I. 47.

[15] *See* D.I. 46; D.I. 48; D.I. 53; D.I. 60; D.I. 61.

[16] *See generally* Hr'g Tr.; D.I. 72.

[17] *See Feldman v. Cutaia*, 2006 WL 920420, at *7 (Del. Ch. Apr. 5, 2006).

[18] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002) (internal quotation marks omitted) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[19] *Feldman*, 2006 WL 920420, at *7.

**IT IS HEREBY ORDERED** this 20th day of May, 2021, that:

1.      The Motions are **DENIED** as to Count I.  Malca has pled facts making it reasonably conceivable that he is entitled to a declaratory judgment that he owns at least 600,256 Rappi shares.

      a.      Mejia argues this count should be dismissed as to him because the declaratory judgment is concerned with Malca's shares "*of Rappi*," so only Rappi is capable of providing relief.  But as alleged, Mejia is presently and wrongfully holding Malca's Rappi shares for himself, and a declaratory judgment against Mejia would affect if and how he may continue to possess those shares.

      b.      Both Defendants contend Count I is duplicative of Plaintiff's breach of contract and conversion claims.  It is not.  Count I does not invoke any breach of contract and may stand even if Mejia's actions did not explicitly breach the Investment Agreement.  Count I focuses on Malca's Grability equity as converted through the Roll-Up.  Thus, Count I turns on the Conversion and Roll-Up's mechanics, through which Malca alleges his Grability shares were automatically converted into Rappi shares.

      c.      Defendants also contend Count I must be dismissed because it attempts to adjudicate past conduct.  Count I seeks a declaratory judgment as to present ownership, based on the Investment Agreement and Roll-Up. Plaintiff seeks a declaration that he has title to the shares now and going forward.  This Court

8

frequently issues declaratory judgments as to present and future ownership based on past conduct or agreement.[20]

2.　　The Motions are **DENIED** as to Count II.  Malca has stated a claim for breach of contract.  To state a viable breach of contract claim, a plaintiff must allege a (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff.[21]  In order to adequately allege the first element of the claim, there must exist a valid contract.  Under Delaware law, a valid contract exists where "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[22]

a.　　Mejia contends Malca has failed to adequately allege the existence of an enforceable contract because the Investment Agreement lacked essential terms.  In particular, he contends it lacks essential terms with respect to (1) the $150,000 loan, such as the loan's duration, interest rate, payment method, and security; (2) when the purchase of Malca's shares should occur and any

---

[20] *See, e.g.*, *McAllister v. Kallop*, 1995 WL 462210, at \*20 (Del. Ch. July 28, 1995) (assessing the plaintiff's entitlement to a declaratory judgment that the defendant owned certain shares of company stock); *see also Lynch v. Gonzalez*, 2020 WL 4381604, at \*39 (Del. Ch. July 31, 2020) (granting a declaratory judgment as to company ownership); *Bata v. Hill*, 139 A.2d 159 (Del. Ch. 1958) (granting a declaratory judgment as to ownership of certain shares of corporate stock).

[21] *E.g.*, *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

[22] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

9

restrictions on those purchases; (3) who would be entitled to receive distribution of those shares; and (4) what rights, if any, Malca might hold for Mejia's later-acquired Grability shares if Mejia had to contribute additional funds to secure those shares.

b.  "What [contract] terms are material [or essential] is determined on a case-by-case basis, depending on the subject matter of the agreement and on the contemporaneous evidence of what terms the parties considered essential."[23] The issue of "materiality" in the breach of contract context raises "predominantly a question of fact."[24]  Therefore, at this stage, Malca need only allege "a rough skeleton of definite obligations" to "escort this claim past [Mejia's] motion."[25]

c.  "[I]t is reasonably conceivable that [Malca] could prove, based on the facts alleged in the Complaint, the [Investment Agrement] contained all material and essential terms. . . ."[26]  This is all that is required to survive Mejia's

---

[23] *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018); *see Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986) ("[O]ur task is to determine the factual setting in which the document that is here claimed to constitute a contract was negotiated and executed and to decide the factual question whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations and formed a contract.").

[24] *Matthew v. Laudamiel*, 2012 WL 2580572, at *10 (Del. Ch. June 29, 2012) (quoting *Branson v. Exide Elecs. Corp.*, 645 A.2d 568 (Del. 1994) (TABLE)).

[25] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *5 (Del. Ch. Feb. 3, 2009).

[26] *Pharmathene, Inc. v. SIGA Techs., Inc.*, 2008 WL 151855, at *13 (Del. Ch. Jan. 16, 2008).

Motion. Malca's Complaint pleads the "essential terms for th[e] agreement, which were quite simple: Malca gave Mejia $150,000 in exchange for an 11.2% stake in Grability, and Mejia held those shares for Malca's benefit."[27] The essential terms at the time of contracting were those that established the terms of Malca's investment: the amount of his contribution, the amount of shares received, and that Mejia would purchase and hold those shares for Malca's benefit.

d. The additional terms Mejia conjures up are not essential to the Investment Agreement as pled. For example, Malca is not seeking to enforce the loan itself, so more detailed loan terms are not essential. As for the terms of Malca's investment, at the time of contracting and the initial investment, Grability had not been incorporated, and nothing suggests the parties thought rights pertinent to potential future corporate acquisitions, changes of control, or spinoffs were essential. To declare such terms essential at the pleading stage would undermine and eviscerate many legitimate contracts that bear simple terms, and would impose on contracting parties the burden of carrying a crystal ball at the start-up stage of business development. Whether Mejia's suggested additional terms are essential is a question of fact to be fleshed out in discovery.[28]

---

[27] D.I. 53 at 14.

[28] *See, e.g.*, *Matthew*, 2012 WL 2580572, at *10; *see also Pharmathene, Inc.*, 2008 WL 151855, at *14 ("[Defendant]'s argument is too conclusory to be convincing. [Defendant] did not cite any legal authority for its contention the [agreement] lacks certain material or essential terms . . . . . Hence, the issue is primarily one of fact. At this early stage in the

e. Mejia next attacks Count II on the basis that the terms Plaintiff did allege are not sufficiently definite to form the basis of an enforceable contract. "This is mostly, if not entirely, a question of law."[29] Essential terms are "sufficiently definite and certain to be enforceable" "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."[30] Mejia contends the Investment Agreement's terms offer no way to determine whether there are any limitations on what Mejia could do with Plaintiff's Grability shares; whether and how Mejia was required to re-register the shares in Plaintiff's name; what Mejia could do with Plaintiff's shares; and whether Plaintiff would obtain interest in shares of another company (such as Rappi).[31]

---

proceeding, however, the facts remain to be developed. Moreover, [Defendant] has failed to cite anything in the Complaint and its related documents that would enable me to conclude [Plaintiff] could not conceivably show from the facts alleged that the [agreement] addresses all the material and essential terms . . . . It certainly is open to question whether the terms mentioned in the [agreement] constitute *all* of the material and essential terms . . . , but resolution of that issue must await further development of the record." (emphasis in original)).

[29] *Eagle Force Hldgs.*, 187 A.3d at 1232.

[30] *Id.* (explaining that if a court can understand what obligations parties hold "based upon the agreement's terms, and applying proper rules of construction and principles of equity," the contract's terms are sufficiently definite).

[31] D.I. 46 at 20.

12

f.     The Investment Agreement's terms are not vague or subject to more than one meaning.[32] As long as the Court can "ascertain what the parties have agreed to do" in light of the terms alleged, a contract's terms are not so vague as to make it unenforceable.[33] The terms as alleged "manifest a mutual assent between the parties as to the essential terms, including what was to be transferred under the agreement, how, and to whom."[34]

g.     At this stage, Plaintiff has sufficiently pled terms establishing he and Mejia agreed Plaintiff owns certain Grability shares. As alleged, Plaintiff agreed to transfer $150,000 to Mejia, and Mejia agreed to use that money to purchase the shares and hold them in his name for Plaintiff, the beneficial owner. That Mejia abided by these terms from 2013 until 2019 "further supports this conclusion" that the parties knew to what they were agreeing and understood the contract sufficiently to perform.[35] It is reasonably conceivable that Plaintiff's rights in the Grability shares under the Investment Agreement would include any right as a Grability

---

[32] *See, e.g.*, *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385–86 (Del. 2012) ("To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning.").

[33] *Eagle Force Hldgs.*, 187 A.3d at 1232.

[34] *Black Horse Cap., LP v. Xstelos Hldgs., Inc.*, 2014 WL 5025926, at *10, *12 (Del. Ch. Sept. 30, 2014) (agreeing with the defendant's argument as stated and holding that the plaintiff failed to plead facts demonstrating the parties formed a contract).

[35] *Pharmathene, Inc.*, 2008 WL 151855, at *14 (concluding that "[t]he parties' conduct, as alleged in the Complaint," supported the findings that the plaintiff had pled the subject agreement included all material and essential terms).

stockholder to purchase or otherwise obtain Rappi shares, which in turn would afford the attendant right to cash out those Rappi shares in the Softbank Tender. That the Investment Agreement did not foresee the specific events that unfolded in the future does not render its terms vague.

        h.     Finally, Mejia contends Plaintiff failed to state a viable claim for breach of contract because he has failed to allege Mejia breached any provision of the Investment Agreement. The Investment Agreement required Mejia to hold Grability shares for Malca's benefit, and action counter to that obligation constitutes breach. As alleged, it is reasonably conceivable that Mejia breached the Investment Agreement by declaring the Rappi shares derived from Malca's Grability shares were not Malca's. Whether a breach actually occurred is ultimately a question of fact.[36]

    3.     The Motions are **DENIED** as to Count III. "Generally speaking, any distinct act of dominion wrongfully exerted over the property of another, in denial

---

[36] *See, e.g.*, *State v. Cahill*, 443 A.2d 497, 500 (Del. 1982) ("The simplest contract case makes our point regarding this view of factual issues. If a defendant refuses to convey a chattel pursuant to a contract, and the plaintiff claims the chattel is unique and subject to specific performance, the factual issue of the breach is precisely the same in equity as it would be in a damage action at law."); *Matthew v. Laudamiel*, 2014 WL 5499989, at *2 (Del. Ch. Oct. 30, 2014) (suggesting that breach is an issue of fact); *Saienni v. G & C Cap. Gp., Inc.*, 1997 WL 363919, at *3 (Del. Super. May 1, 1997) (explaining that where facts are disputed, "the issue of whether a material breach of a contract has occurred is ordinarily a question of fact").

of his right, or inconsistent with it, is a conversion."[37] A plaintiff states a viable claim for conversion where he alleges (1) he had a property interest in equipment or other property; (2) he had a right to possession of the property; and (3) the property was converted, in that the defendants wrongfully possess or disposed of the property as if it were their own.[38] "[C]onversion may be alleged either in the proper general terms or by setting out specific facts that clearly establish it."[39] But "[b]efore bringing an action for conversion, a plaintiff must demonstrate that it made a demand that the property be returned and the defendant refused the demand. This requirement is excused, however, when the alleged wrongful act amounts to a denial of the rights of the real owner."[40]

      a.    "A stockholder's shares are converted by any act of control or dominion without the stockholder's authority or consent, and in disregard, violation,

---

[37] *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933).

[38] *E.g.*, *Israel Disc. Bank of N.Y. v. First State Depository Co.*, 2013 WL 2326875, at *19 (Del. Ch. May 29, 2013).

[39] *Drug, Inc.*, 168 A. at 94; *see also In re Happy Child World, Inc.*, 2020 WL 5793156, at *11 (Del. Ch. Sept. 29, 2020) ("As for conversion, that claim rests on any distinct act of dominion wrongfully exerted over the property of another, in denial of the plaintiff's right, or inconsistent with it. In order to state a claim for conversion, the plaintiff must generally allege that the defendant violated an independent legal duty." (alterations, footnotes, and internal quotation marks omitted) (quoting *Drug, Inc.*, 168 A. at 93, and also quoting *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009))).

[40] *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *24 (Del. Ch. May 18, 2009) (footnote omitted), *aff'd*, 988 A.2d 938 (Del. 2010); *accord Drug, Inc.*, 168 A. at 94.

15

or denial of his rights as a stockholder of the company."[41]  "An action for conversion lies whenever an individual or entity interferes with a stockholder's right to shares of stock, which represent a property interest in the company."[42]  Thus, "[a] corporation itself may interfere with the rights of the stockholder by simply denying them, and thus become liable for conversion."[43]  Here, Malca has stated a viable conversion claim against Mejia and Rappi, as they allegedly denied his rightful ownership of 600,256 Rappi shares.

b.    Though Defendants raise the argument that "[u]nder Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort,"[44] there is room for an alternative tort claim here.  Malca's conversion claim against Mejia does not arise solely from a breach of contract;[45] the Investment Agreement may prove to lack material terms, or its Grability-centric terms may not have been breached.  There is room for a nonduplicative, alternative tort claim that Mejia took Malca's Rappi

[41] *Arnold v. Soc'y For Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (alterations and internal quotation marks omitted) (quoting *Drug, Inc.*, 168 A. at 93–94).

[42] *Triton Constr. Co.*, 2009 WL 1387115, at *24 n.150 (citing and discussing *Drug, Inc.*, 168 A. at 93).

[43] *Drug, Inc.*, 168 A. at 93.

[44] *West v. Access Control Related Enters., LLC*, 2019 WL 2385863, at *4 (Del. Super. Ct. June 5, 2019) (quoting *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *1 (Del. Super. Ct. July 25, 2007)).

[45] *Kuroda*, 971 A.2d at 889 (internal quotation marks omitted) (quoting *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007)).

shares. And as to Rappi, Plaintiff did not bring any potentially overlapping breach of contract claim.[46] Thus, the existence of a breach of contract claim against Mejia does not foreclose Count III against the Defendants.

        c.     Malca adequately pleads each element of conversion against Mejia and Rappi. Throughout his complaint, Malca alleges (1) his property interest as beneficial owner in the Rappi shares as a consequence of the Roll-Up (or his interest in the opportunity to acquire Rappi shares as a result of his Grability equity ownership); (2) his right to possess, tender, or otherwise control those Rappi shares; and (3) Mejia's conversion by claiming Malca's shares as his own and denying Malca the benefit of his rightful ownership. As alleged, Mejia took Plaintiff's shares as Rappi's agent or at least leveraged his role as a Rappi officer and directors in denying Malca's ownership.

        d.     Admittedly, Malca's conversion allegations against Rappi are more sparse. Paragraph 57 of the Amended Complaint alleges "*Rappi* suddenly declared that Malca owned no Rappi shares," but "*Rappi* had repeatedly represented to Malca that his status as a shareholder of Rappi was secure."[47] Paragraph 58 identifies Mejia as Rappi's alleged agent in this misdeed, alleging that "because

---

[46] Rappi was not a party to the Investment Agreement, so Malca would not be able to recover from Rappi under a breach of contract theory.

[47] Am. Compl. ¶ 57 (emphasis added).

Mejia is an Executive Officer and Director of Rappi and claimed Malca's shares as his own, Rappi and Mejia had no trouble effectuating the false claim that Malca owns no shares in Rappi."[48] Plaintiff contends both "*Rappi and Mejia* excluded Malca from the SoftBank Tender."[49] Plaintiff has therefore alleged that Rappi, through Mejia and otherwise, withheld shares from Plaintiff by misrepresenting their rightful ownership in Rappi's books and records, and by blocking Malca from tendering those shares in the Softbank Tender. Therefore, Plaintiff has stated a claim that Rappi, through Mejia, and Mejia, individually, "wrongfully possessed or disposed of such [shares] as if [they] were [Mejia's] own."[50] Count III therefore proceeds against both Mejia and Rappi.

4.     The Motions are **DENIED** as to Count IV. "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[51] In order to state a claim for unjust enrichment, a plaintiff must sufficiently allege: "(1) an enrichment, (2) an impoverishment, (3) a relation

---

[48] *Id.* ¶ 58.

[49] *Id.*

[50] *Israel Disc. Bank of N.Y.*, 2013 WL 2326875, at *19.

[51] *E.g.*, *Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *14 (Del. Ch. Jan. 31, 2013) (internal quotation marks omitted) (quoting *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007)).

between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[52]

        a.     Mejia moves to dismiss this claim as duplicative in light of Malca's breach of contract claim. But Plaintiff has explicitly stated he only intends to pursue this claim if Defendants succeed in disarming the Investment Agreement.[53] Such an alternative unjust enrichment claim need not be supported by an independent factual basis.[54]

        b.     Malca has sufficiently pled unjust enrichment. The Complaint alleges Mejia held some Grability shares for himself and some for Plaintiff, but used *all* of these Grability shares to obtain the corresponding Rappi shares. Plaintiff

---

[52] *E.g.*, *BAE Sys. Info. & Elec. Sys. Integration, Inc.*, 2009 WL 264088, at *7–8 (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393–94 (Del. Ch. 1999)).

[53] *See Boulden*, 2013 WL 396254, at *14 ("As is typical, [Plaintiff] has pleaded this claim in the alternative. In some circumstances, alternative pleading allows a party to seek recovery under theories of contract or quasi-contract. This is generally so, however, only when there is doubt surrounding the enforceability or the existence of the contract. Courts generally dismiss claims for *quantum meruit* on the pleadings when it is clear from the face of the complaint that there exists an express contract that controls. Where, as here, doubt exists surrounding the existence of a contract, the Court will allow [Plaintiff] to seek recovery under this theory provided the requisite elements are adequately pleaded." (footnote omitted) (quoting *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005))).

[54] *See, e.g.*, *id.* (concluding the plaintiff properly based an alternative claim for unjust enrichment upon the same factual basis as a claim for breach of contract where there was doubt about the existence or enforceability of the contract).

contends 33.2% of Mejia's Rappi shares belong to him.[55] Plaintiff alleges Mejia has been enriched by taking Plaintiff's shares, and that Plaintiff has suffered an impoverishment from his lost shares. Plaintiff has also pled an absence of justification for Mejia's exclusion of Plaintiff from the alleged Roll-Up into Rappi and the Softbank Tender.

5.      The Motions are **DENIED** as to Count V. To state a claim for breach of fiduciary duty, a plaintiff must allege "(i) that a fiduciary duty exists; and (ii) that a fiduciary breached that duty."[56] "The core principle of a fiduciary duty is that one who controls property of another may not, without implied or express agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner."[57] And "[t]he duties of care and loyalty flow from that 'central aspect' of the fiduciary relationship."[58] If a plaintiff reasonably alleges facts that suggest such an agency relationship is present and the alleged fiduciary acted contrary to that core principle, the plaintiff has successfully stated a claim upon which relief may be granted.

---

[55] Malca seeks relief with respect to "33.2% of the shares that Mejia currently owns in Rappi adjusted upward for any transfers or sales of shares in which Mejia may have participated prior to, in connection with, or after the Rappi Conversion." Am. Compl. ¶ 61.

[56] *E.g.*, *Heller v. Kiernan*, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002).

[57] *Stewart v. Wilm. Tr. SP Servs., Inc.*, 112 A.3d 271, 297 (Del. Ch. 2015) (internal quotation marks omitted) (quoting *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48 (Del. Ch. 1991)).

[58] *Id.* (quoting *USACafes*, 600 A.2d at 48).

a.  Here, Plaintiff has alleged that Mejia owed Malca fiduciary duties through two sources:  (1) as his nominee or agent under the Investment Agreement, and (2) as an officer and director of Rappi.  Plaintiff has alleged facts making it reasonably conceivable that Mejia breached his duties in both capacities.

b.  It is reasonably conceivable that Mejia owed Plaintiff fiduciary duties as the holder of Plaintiff's beneficially owned shares.  Plaintiff specifically pleads that Mejia held shares as an agent or nominee for Plaintiff's benefit, and that Mejia explicitly acknowledged that role.[59]  That agency relationship was created by the Investment Agreement.[60]  Though an arms-length contract alone may be insufficient to establish an agency relationship,[61] the facts pled suggest that Malca and Mejia's relationship was not forged in an arm's-length commercial setting; rather, Malca has alleged that he and Mejia have a close personal relationship; Mejia was dependent on Malca's funding; and that Malca was dependent on Mejia for the specific purpose of holding the stock for his benefit.  These allegations are sufficient

---

[59] *See, e.g.*, Am. Compl. ¶ 49.

[60] *See id.* ¶¶ 6–7.

[61] *See Forsythe v. ESC Fund Mgmt. Co. (U.S.), Inc.*, 2007 WL 2982247, at *10 (Del. Ch. Oct. 9, 2007) ("[A] straightforward, arm's-length commercial relationship arising from contract does not give rise to fiduciary duties.").

21

at this stage: "[t]he determination of whether an agency relationship exists is normally a question of fact."[62]

c.    As Malca's agent, Mejia was constrained by several duties, including "a duty to carry out [Malca's] instructions promptly and accurately," a duty to "act in [Malca's] best interests," and a duty to "refrain from self-dealing."[63] Specifically as a "nominee," Mejia, "as [an] agent[] of the beneficial owner[], owe[d] a duty to take the necessary steps to afford the true owners the opportunity to realize the benefits of [a p]roposed [t]ransaction."[64] Mejia allegedly acknowledged these duties: at the time of the Investment Agreement, Mejia stated his success would be Malca's, and he assumed this "as a great responsibility and commitment to [Malca]."[65] Malca has pled a fiduciary relationship.

d.    Malca has also pled a breach of the duty of loyalty. Malca alleges Mejia "intentionally block[ed] Malca from using his shares in the SoftBank Tender" to Plaintiff's detriment.[66] Plaintiff also alleges Mejia engaged in self-dealing at

---

[62] *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1177 (Del. 2012) (quoting *Fisher v. Townsends, Inc.*, 695 A.2d 53, 61 (Del. 1997)).

[63] *O'Malley v. Boris*, 742 A.2d 845, 849 (Del. 1999) ("These obligations at times are described as fiduciary duties of good faith, fair dealing, and loyalty. They are comparable to the fiduciary duties of corporate directors, and are limited only by the scope of the agency." (footnote omitted)).

[64] *Applebaum v. Avaya, Inc.*, 812 A.2d 880, 889 (Del. 2002) (citing *O'Malley*, 742 A.2d at 849).

[65] Am. Compl. ¶ 7.

[66] *Id.* ¶ 101.

22

Plaintiff's expense by failing to acknowledge Plaintiff's interest in Rappi, and instead taking that interest as his own.

e. Plaintiff's remaining allegations center on Mejia's additional fiduciary role as a Rappi officer and director. Count V specifically alleges that "[b]y failing to keep accurate books and records, refusing to acknowledge Plaintiff Malca's ownership interest in Defendant Rappi, and intentionally blocking Malca from using his shares in the SoftBank Tender, Defendant Mejia failed to fulfill his duties as an Executive Officer and Director of Rappi and personally enriched himself, all at Malca's expense."[67] Plaintiff alleges classic self-dealing: Mejia leveraged his position as a Rappi fiduciary to reject a proper stockholder's ownership on Rappi's behalf in order to retain that equity for himself. Paragraph 58 alleges that Mejia rejected Malca's ownership as a Rappi officer and director. Those positions afforded Mejia the ability to foreclose Malca's participation in the Softbank Tender; prevent Malca's rightful ownership from being documented in Rappi's books and records; and ensure Mejia would keep record title to those shares. Accordingly, Plaintiff has alleged that Malca breached his fiduciary duties as an officer and director of Rappi.

6. Finally, Defendants' Motions on the grounds that Counts II, III, IV, and V are untimely are **DENIED**. Defendants mischaracterize Malca's claims. Malca

---

[67] *Id.*

alleges breach occurred when Mejia declared the Rappi shares did not belong to Malca, not in any initial failure to register Grability shares at the time of the Investment Agreement. The wrong underlying Malca's claims occurred in 2019, when Mejia first disavowed Plaintiff's interest in Rappi. Thus, the three-year statute of limitations has not run.

/s/ Morgan T. Zurn
Vice Chancellor Morgan T. Zurn