**NEW YORK STOCK EXCHANGE, an unincorporated association under the laws of the State of New York, Plaintiff,**

**v.**

**PICKARD & COMPANY, Incorporated, a corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware, New Castle.

Jan. 27, 1971.

David Roeberg, of Sullivan, Potter & Roeberg, Wilmington, for petitioner, Peter C. Buswell.

William H. Uffelman, Jr., Wilmington, for Aubrey B. Lank, Receiver of Pickard & Co., Inc.

DUFFY, Chancellor:

In this proceeding Peter C. Buswell (petitioner) seeks an order upon Aubrey B. Lank, the Receiver of Pickard & Company, Incorporated (Pickard) directing delivery to him of certain stock certificates and cash dividends paid on them. Pickard was a stockbroker member of the New York Stock Exchange for which this Court appointed a Receiver on April 22, 1969 on the grounds of insolvency. 8 Del.C. § 291.

**A.**

In 1965 Buswell became a customer of Pickard and established a margin account with it. To cover margin purchases and as collateral for future purchases Buswell delivered to Pickard in 1965, 800 shares of Armstrong Cork Company (Armstrong), a security traded on the New York Stock Exchange. The certificates were thereafter registered on Armstrong's books in Pickard's ("street") name.

On August 16, 1967 Buswell sold 100 of the Armstrong shares thus reducing the balance held by Pickard to 700. On November 28, 1967 Buswell had a debit balance of $162 in his margin account; he requested Pickard to transfer the 700 shares to Cape Ann Bank & Trust Company of Gloucester, Massachusetts (Bank) for the purpose of collaterizing a loan. Pickard delivered certificates for the 700 shares to the Bank; they were still in street name but had been endorsed by Pickard to Buswell. The Bank received the shares but did not have them re-registered in Buswell's name. It merely retained possession up to and including June 9, 1969.

On June 9, 1969, Armstrong declared a 2-for-1 split payable to stockholders of record on May 9. As a result of the split an additional 700 shares were issued in the name of Pickard, the holder of record, and delivered to the Receiver who had been appointed prior thereto. These are the shares in controversy.

After the split the Bank advised Buswell that it should receive the additional 700 shares pursuant to the collateral agreement and it was then discovered that those shares had been delivered to the Receiver. The Bank then, for the first time, forwarded to Armstrong for registration in Buswell's name the 700 shares which it had been holding. The Bank received a certificate for those shares dated March 16, 1970 which are now registered in the name of Peter C. Buswell.

All cash dividends declared by Armstrong on the 700 shares between November 28, 1967 and March 16, 1970 were paid to Pickard or the Receiver. The Receiver is without knowledge of the disposition of any of dividends received by Pickard prior to his appointment.

The question for determination is whether petitioner is to be regarded as a general creditor of Pickard, or whether he is entitled to immediate possession of the 700 shares of Armstrong Cork held by the Receiver, together with such dividends as

were paid on them to Pickard and the Receiver.

## B.

■ The inquiry begins with the nature of the relationship between the broker, Pickard, and the customer, Buswell. Speaking generally, the position of a stockbroker is often twofold: (a) when he buys or sells a security upon the order of a customer he is the agent of that customer in that transaction; (b) when he provides his own money to complete the order by paying for the security he is a principal *vis-a-vis* the customer in that phase of the transaction. As an agent he owes a fiduciary duty to his customer; as a principal he is a creditor of the customer, holding the security purchased as collateral for the debt (i. e., with a lien thereon) and the relationship is thus that of pledgor and pledgee. The pledge relationship applies equally to securities deposited by a customer with a broker as part of a marginal transaction, or to secure purchase of other securities on margin. Meyer, The Law of Stockbrokers and Stock Exchanges § 41; 12 Am.Jur.2d Brokers §§ 131, 142.

■ I conclude that the Armstrong shares were held by Pickard in a pledge relationship with Buswell, that Pickard had a lien on those shares to secure such obligations as Buswell owed to it as a result of purchases on margin. Richardson v. Shaw, 209 U.S. 365, 28 S.Ct. 512, 52 L.Ed. 835 (1908).

■ The pledge relationship, however, continued only so long as Pickard retained the shares. On November 28, 1967, before the Receiver was appointed, it vountarily surrendered possession of the shares by endorsement to Buswell and delivery of them to the Cape Ann Bank. The pledge ended at that time and with it Pickard's lien on the shares. 72 C.J.S. Pledges § 27e. Thus at that point in time Pickard had no claim of any kind to the 700 shares of Armstrong stock. The shares delivered by Armstrong to the Receiver after the split were based on the original shares. In other words, neither Pickard nor the Receiver had any independent basis for claiming a right to those shares. Any such right followed from a right to the shares prior to the split and, as I have said, there was none.

■ It follows that the Receiver has no equitable interest in the shares he holds and that delivery of them to him was a mistake which should now be corrected. Buswell is entitled to the turnover order he seeks as to the 700 shares of Armstrong.*

■ Dividends received by Pickard are a different matter. The record does not show what amounts are involved, nor does it show any such moneys as presently identifiable. Apparently they are not. In order to reclaim these moneys the burden is on Buswell to trace them into a specific account or fund. *Meyer*, supra, § 176. He has not done so and, accordingly, he is to be regarded only as a general creditor of Pickard to the extent of any dividends paid to it on the shares. The parties agree, however, that dividends paid to the Receiver are traceable and the turnover will include these.

---

\* As the Receiver points out, Massachusetts rejects the pledge concept and regards the marginal account relationship between broker and customer as governed by an executory contract: title to a deposited or purchased security is in the broker with a duty on him to make delivery when he is paid the purchase price of the security or the balance due on his account. Dennett v. Wilmerding, 291 Mass. 264, 196 N.E. 860 (Mass.1935); *Meyer*, supra, § 41. Compare Lavien v. Norman, 55 F.2d 91 (1 Cir. 1932) and Denton v. Gurnett & Co., 69 F.2d 750 (1 Cir. 1934). But, as I see it, adoption of that approach would produce the same result here: Pickard voluntarily delivered the shares on request and neither claimed nor retained any interest in them.