**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

December 29, 2023

Jody C. Barillare, Esquire
Morgan, Lewis & Bockius LLP
1201 N. Market Street, Suite 2201
Wilmington, DE  19801

Kelly E. Farnan, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

RE:  ***In re Reinz Wisconsin Gasket, LLC,***
      Civil Action No. 2022-0859-MTZ

Dear Mr. Barillare and Ms. Farnan:

As you are aware, I have appointed a receiver over Reinz Wisconsin Gasket, LLC ("RWG")

> for the limited purpose of investigating whether RWG had assets when it filed its notice of dissolution and cancellation.  The Receiver shall be empowered to investigate the existence of these assets, including insurance policies, litigable claims, and claims or other proceedings relating to any other assets.  The Receiver may also investigate how this litigation has been funded and any claims related to the same.[1]

In conducting its investigation, the receiver moved to compel "documents and cooperation" (the "Motion") from DCo LLC, RWG's sole member.[2]  DCo paid for a defense purportedly mounted by RWG in this litigation and elected to dissolve RWG.[3]  DCo has opposed the Motion, asserting that (i) this Court lacks jurisdiction over it, (ii) the receiver has not asked for documents in a manner that compels a response, and (iii) DCo can withhold documents from RWG's receiver

---

[1] Docket Item ("D.I.") 105 ¶ 1.

[2] D.I. 117 (hereinafter "Mot.").

[3] Readers unfamiliar with why I would use the adjective "purportedly" are referred to my previous opinion in this matter at 2023 WL 3300042 (Del. Ch. May 8, 2023).  I write for those familiar with the twists and turns of this case.

on the basis of its own privilege.[4]  I held oral argument on December 1, 2023, and the parties followed up with supplemental letters.  For the reasons that follow, the Motion is denied.

## I.      Personal Jurisdiction

I begin with personal jurisdiction.  DCo is a Virginia entity with its principal place of business in Tennessee.[5]  The receiver has not served DCo with a subpoena in Virginia or Tennessee, and DCo's counsel has refused to accept service of a Delaware subpoena.[6]

The receiver has attempted to establish this Court's personal jurisdiction over DCo according to a well-worn path for defendants:  a statutory means of service and a due process analysis.[7]  If the receiver and DCo were situated as the plaintiff and defendant in a civil action, the Court would consider whether the receiver had made a prima facie case of personal jurisdiction.[8]

But DCo is not a defendant:  the receiver is seeking what might be formally described as third-party discovery.  Federal circuit and district courts have held a court may compel action by a nonresident nonparty so long as minimum contacts and due process are satisfied, if the minimum contacts would support the exercise of specific jurisdiction.[9]  In the context of a request to compel a nonresident

---

[4] DCo's counsel has entered a limited appearance solely to oppose the Motion.

[5] Mot. Ex. G at 1.

[6] D.I. 141.

[7] *E.g.*, *Altabef v. Neugarten*, 2021 WL 5919459, at *3 (Del. Ch. Dec. 15, 2021).

[8] *See, e.g.*, *id.*

[9] *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134–37 (2d Cir. 2014) (considering a party's request for an order compelling performance by a nonparty, and noting the United States Supreme Court has not addressed specific jurisdiction over nonparties, and that lower federal courts have adapted the test for civil defendants, "first assess[ing] the connection between the nonparty's contacts with the forum and the order at issue, and then decid[ing] whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice"); *id.* at 141–42 (noting "specific personal jurisdiction may permit the district court to order the [foreign nonparty] to comply with

nonparty to respond to a subpoena, the United States District Court for the Southern District of New York has found the traditional three requirements must be satisfied: "(1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process."[10] "At least one circuit has translated this test to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue."[11] It is "enough for purposes of due process in these circumstances that the nonparty's contacts with the forum go to the actual discovery sought rather than the underlying cause of action."[12] District courts have concluded that in the context of a motion to compel a nonparty's performance, "it is consistent with the standard for determining whether personal jurisdiction exists over a civil defendant for the Court to place the initial burden of proving personal jurisdiction over a foreign nonparty in a discovery dispute on the movant."[13]

---

particular discovery demands" (citing *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996), as finding specific jurisdiction where the "subpoena enforcement action" at issue "ar[ose] out of [the nonparty's] contacts" with the forum)); *In re 3M Combat Arms Earplug Prods. Liability Litig.*, 2020 WL 5578428, at *6–7 (N.D. Fla. Feb. 18, 2020) (citing *Gucci Am.*, 768 F.3d at 141–42). I could find no Delaware authority on this issue, but one District Court's relatively recent observation made me less worried that I missed something: "[t]here appears to be widespread disagreement, and scant authoritative guidance, as to how courts should analyze whether they have personal jurisdiction over nonparty witnesses." *Bartlette v. S.C. Dept. of Corr.*, 2019 WL 13198874, at *1 (D.S.C. 2019) (citing *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 712 n.3 (D.S.C. 2017) and Ryan W. Scott, Note, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery*, 88 Minn. L. Rev. 968, 981 (2004)).

[10] *Gucci Am., Inc. v. Weixing Li*, 135 F.Supp.3d 87, 93 (S.D.N.Y. 2015); *accord NIKE, Inc. v. Wu*, 349 F.Supp.3d 346, 354 (S.D.N.Y. 2018).

[11] *Gucci Am.*, 768 F.3d at 141.

[12] *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019).

[13] *In re 3M Combat Arms Earplug Prods. Liability Litig.*, 2020 WL 5578428 at *7 n.5; *accord Concepts NREC, LLC v. Qiu*, 2021 WL 6750964, at *4 (D. Vt. Sept. 20, 2021).

DCo has not objected to the use of this framework, but rather has asserted only that the framework is not satisfied. I will consider whether the receiver has established a prima facie case for personal jurisdiction under the test for nonresident defendants, with a focus on DCo's connection to Delaware and what the receiver seeks to compel DCo to do.

The receiver points to two grounds for statutory jurisdiction. The first is 6 *Del. C.* § 18-109, on the theory that DCo, RWG's sole member, was a de facto manager.[14] "Under Section 109(a)(ii), a defendant who participated materially in the management of the limited liability company can be served as an acting manager. . . . The plain language of Section 18-109(a)(ii) . . . confers the status of an acting manager on an individual who has a significant role in managing an LLC or who plays a significant part in an activity or event that constitutes part of the management of the LLC."[15]

The receiver points out that RWG's operating agreement gave DCo the power to dissolve and cancel the Company. In August 2022, DCo did just that.[16] But this power, and the use of it, does not make DCo a de facto manager: the plain language of the operating agreement gave that power to DCo in its capacity as a member.[17]

---

[14] DCo could not be a formal manager under Section 18-109(a) because RWG was a manager-managed LLC: its operating agreement vested "sole responsibility for managing the business and affairs of the Company in the ordinary course of business, except as otherwise provided herein or in the Act" in RWG's manager, initially an individual identified in the agreement. JX 46 § 3(A). It also stated that "any Member who is not a Manager shall have no right to participate in the management of the conduct of the Company's business and affairs nor any power or authority to act for or on behalf of the Company in any respect whatsoever." *Id.* § 3(C).

[15] *In re P3 Health Group Holdings, LLC*, 285 A.3d 143, 152–53 (Del. Ch. 2022).

[16] *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 2568326, at *2 (Del. Ch. Mar. 20, 2023) (finding, post-trial, that DCo called a special meeting for the purpose of discussing RWG's dissolution, presented a windup plan, and voted to dissolve RWG).

[17] The Delaware Limited Liability Company Act grants standing to apply for dissolution to "a member or manager." 6 *Del. C.* § 18-802; *In re Carlisle Etcetera LLC*, 2015 WL

The receiver also asserts DCo materially participated in RWG's management because DCo officers were also RWG officers and directors, and the two retained the same counsel. But the only act the receiver identifies those persons taking is RWG's dissolution.[18] As explained, DCo's role in RWG's dissolution was explicitly in its capacity as RWG's member. It might be that DCo materially participated in RWG's management, but the present record does not establish that.

Separately, the receiver contends DCo is subject to statutory jurisdiction under Delaware's long-arm statute, 10 *Del. C.* § 3104, because DCo voted to dissolve RWG and filed the certificate of cancellation. "Filing a certificate of cancellation is the transaction of business in Delaware within the meaning of § 3104(c)(1)."[19]

RWG's certificate of cancellation states it was "filed by the undersigned, as an authorized person of [RWG]," and was signed by "Sara Kirkpatrick, Authorized Person."[20] DCo argues Kirkpatrick filed the certificate as authorized by RWG, so RWG was the principal who directed her to file the certificate. The receiver argues Kirkpatrick was DCo's Secretary, and that she had no role at Reinz, so Kirkpatrick's principal must have been DCo; the receiver submitted documents making a prima facie showing Kirkpatrick worked on RWG's dissolution at the direction of DCo's president.[21] Because RWG's operating agreement authorized DCo to dissolve it, Kirkpatrick as directed by DCo would be an authorized person under RWG's operating agreement.

DCo argues it would violate due process to force DCo to participate in this action when its motion to intervene was denied. But as I explained at the hearing on the Motion, DCo's motion to intervene was denied based on prejudice and

---

1947027, at *4 (Del. Ch. Apr. 30, 2015). One can be a member and seek dissolution; one need not be a manager.

[18] D.I. 131 ¶ 12.

[19] *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027–28 (Del. 2012).

[20] JX 156.

[21] D.I. 131, Transmittal Affidavit of Brian Loughnane, Esq., Exs. J, K, L, M, O.

delay.[22]   It would not violate due process to exercise jurisdiction over DCo for purposes of discovery into its cancellation of RWG when that is the very act that satisfied long-arm specific jurisdiction.   There is a sufficient nexus between the jurisdictional act and the receiver's request from DCo.

Having gotten this far, I go back to the beginning.  The first requirement to exercise jurisdiction to compel a nonresident nonparty to respond in discovery is proper service.[23]  DCo has not been served with a subpoena; the receiver has made no attempt to serve DCo other than to ask counsel to accept service.[24] I cannot exercise jurisdiction over DCo until it has been served.

## II.     The Need For A Formal Request

The receiver anticipates this outcome by arguing that it need not serve any formal requests on DCo because DCo, as RWG's member, has an independent obligation to cooperate.  The receiver cites orders directing managers, officers, employees, and agents of going concerns to cooperate.[25]  The order appointing the receiver over RWG had no such provision.[26]   But assuming for the sake of argument that those provisions make explicit a necessary power that otherwise would be implied, DCo is not a manager, officer, employee, or agent.  DCo is only a member.

---

[22] *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 4986411 (Del. Ch. Aug. 3, 2023).

[23] *NIKE*, 349 F.Supp.3d at 354.

[24] The receiver served a Delaware entity called "DCO, LLC."  The parties do not dispute that was the wrong DCo.

[25] Mot. ¶ 28 (citing *Jagodzinski v. Silicon Valley Innovation Co.*, 2012 WL 593605, at *2 (Del. Ch. Feb. 14, 2012) (appointing a receiver for the production of documents and ordering the company, including its members and employees, to cooperate); *Bruckel v. TAUC Hldgs, LLC*, 2023 WL 4583575, at *8 (Del. Ch. July 17, 2023) (same); *Deutsch v. ZST Digital Networks, Inc.*, 2018 WL 3005822, at *5 (Del. Ch. June 14, 2018) (same); *GMF ELCM Fund LP v. ELCM HCRE GP LLC*, 2019 WL 1501553, at *2 (Del. Ch. Apr. 4, 2019) (noting a manager was ordered to cooperate with a receiver *pendente lite*).

[26] D.I. 105.

The receiver offers no other basis to compel DCo to give the receiver its documents in the absence of any subpoena or other formal request. The receiver has been appointed to investigate the assets of a dissolved entity. He has access to the materials within RWG's custody or control. Hornbook law explains:

> As a general rule, the receiver takes all the property of the [company] which constitutes the subject of the suit and is within the jurisdiction of the court; he or she does not take property not involved in the suit or not included in an order designating the particular property of which the receiver is to have charge.
>
> . . . [T]he receiver stands in the shoes of the entity in receivership, and has no greater right to property than the entity has whose property the receiver was appointed to marshal . . . .
>
> Property not involved in the suit or action or not mentioned in the petition for his or her appointment is not properly in the hands of a receiver.[27]

Were RWG still a living jural entity, DCo would not be obligated to share its documents with RWG under some duty to cooperate. Nothing in RWG's operating agreement commands that,[28] and an equity investor typically does not owe obligations to an entity. It follows that DCo is under no obligation to "cooperate" with RWG's receiver. DCo and its documents are no differently situated from RWG than the other nonparties RWG has already subpoenaed.

---

[27] 75 C.J.S. Receivers § 92 (citing *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) ("Fundamentally, the authority of a receiver is defined by the entity or entities in the receivership. The plaintiff in his capacity of receiver has no greater rights or powers than the corporation itself would have." (cleaned up))); *accord*, *id.* § 94 ("A receiver generally has no right to property which does not belong to the individual or corporation over whose estate the receiver was appointed, at the time of the appointment; a receiver stands in the shoes of the debtor or insolvent.") (citing *New York Stock Exchange v. Pickard & Co.*, 274 A.2d 148 (Del. Ch. 1971)).

[28] JX 46.

### III.    Privilege

The Motion primarily challenged DCo's withholding of documents as privileged.  I am not yet satisfied that Court has personal jurisdiction over DCo, so I do not yet reach this issue.

### IV.    Conclusion

For the foregoing reasons, the Motion is **DENIED**.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*